## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.1:22-cv-11437-DJC

---

MICHELLE GEIGEL, as administrator of the estate of CRISTHIAN GEIGEL,

Plaintiff,

v.

BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, and JOHN/JANE DOES NOS. 1–2

Defendants.

---

## DEFENDANT CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant City of Boston ("the City")[1] respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts I and II of Plaintiff's Complaint ("Complaint"). The case arises from the May 27, 2019, death of Cristhian Geigel ("the decedent") by opioid overdose while he was held in custody at the District 4 police station of the Boston Police Department ("BPD"). Plaintiff alleges a 42 U.S.C. § 1983 Monell claim and a claim under Title II of the Americans with Disabilities Act against the City. As grounds for this motion, the City states:

---

[1] The City of Boston is properly a defendant because the Boston Police Department is a department of the City and not an independent legal entity capable of being sued. See Stratton v. City of Boston, 731 F.Supp.42, 46 (D. Mass. 1989) ("[T]he Police Department is not an independent legal entity. It is a department of the City of Boston.").

1

1) Counts I and II are time-barred because the statute of limitations for § 1983 claims and claims under Title II of the ADA is three years, and the Plaintiff filed her complaint more than three years after the cause of action accrued.

2) Counts I and II are insufficiently pleaded because they set forth conclusory allegations without any factual support, fail to establish that a custom or policy of the City was the moving force behind Plaintiff's alleged injuries, and fail to establish that the City discriminates against drug users.

Accordingly, the Plaintiff's claims cannot proceed, and the City's Motion to Dismiss must be allowed with prejudice.

### FACTUAL ALLEGATIONS[2]

The decedent was a 39-year-old resident of Massachusetts who had been chronically addicted to opioids since high school. See Compl. ¶¶ 15, 24. Plaintiff is the decedent's daughter and the administrator of his estate. See id. ¶ 17. On May 27, 2019, the BPD arrested the decedent in a part of Boston known as Mass and Cass, "an area known as the epicenter of the opioid epidemic" and where BPD officers often arrest/detain intoxicated people. Id. ¶¶ 2, 35, 59. The officers booked the decedent at the District 4 station, where the Complaint alleges prior incidents of overdose occurred. See id. ¶¶ 2, 59. According to the Complaint, "at least one of the officers who participated in [the decedent's] arrest was aware he had a history of opioid use." Id. ¶ 37. The Complaint also alleges that the decedent "appeared to have ingested opioids sometime before his arrest, id. ¶ 47, and that he, "[t]hroughout booking, showed obvious signs of opioid over-intoxication." Id. ¶ 39.

---

[2] For the limited purposes of the instant motion, the City accepts the nonconclusory facts alleged in the Complaint as true.

Later that day in his cell, between 6:00 PM and 6:30 PM, the decedent ingested opioids. Id. ¶ 61.  Immediately after ingestion, his body shook and his limbs flailed before he lay face down on the cell bench.  Id.  Plaintiff alleges that the decedent "visibly struggled to breathe" for a few minutes.  Id. ¶ 62.  Around 6:40 PM, he took his last breath.  Id.  He then continued lying down on the cell bench throughout the night, including through a fire alarm and breakfast, without changing positions.  Id. ¶¶ 46, 64–69.  Pursuant to BPD policies in force at the time, which required officers to "visit . . . persons in their custody at least once every fifteen minutes," BPD Rule 318, § 14, officers walked by and/or checked the decedent's cell approximately forty times throughout the night.  See Compl. ¶¶ 26, 64–69.  Around 8:00 AM the next morning, Officer Kevin Butcher attempted to wake him for a scheduled court hearing.  Id. at ¶ 69.  At that time, Officer Butcher discovered that the decedent was stiff and not moving.  Id.  The officers called Emergency Medical Services, who, upon arrival, did not attempt to resuscitate the decedent because of "obvious signs of death."  Id.

The BPD maintains three relevant policies regarding persons held in custody in addition to Rule 318, § 14.  First, BPD mandates that if officers notice "visible injuries" (such as a broken leg or open wound), "sickness," "unconsciousness," or "unusual appearance or behavior" in a detained person, the officer must summon attention and transport the person to the hospital if so advised. Id. ¶¶ 30–31 (citing BPD Rule 318, §§ 2–3).  Second, BPD mandates close monitoring for persons in custody showing indications of risk of suicide.  Id. ¶ 32 (citing BPD Rule 318, § 15).  Finally, BPD requires persons held in protective custody who are incapacitated from drug use to be transported to a hospital or medical facility.  Id. ¶ 34 (citing BPD Rule 318A).  Beyond these existing policies, the Complaint alleges, the BPD does not have specific policies requiring officers to seek a medical evaluation, obtain outside medical treatment, or provide direct medical care to

persons in custody showing signs of drug intoxication.  See id. ¶¶ 7, 57.  The Complaint also alleges that the BPD has failed "to properly train its officers how to recognize or treat signs and symptoms of opioid intoxication and overdose" and "to supervise, investigate, and discipline officers who violated the right[s] of people living with an addiction or opioid use disorder."  Id. ¶ 4.

## ARGUMENT

### I.   STANDARD OF REVIEW

A complaint or count therein must be dismissed if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, it fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To support a claim, the plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element." Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  See id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful in fact.  Twombly, 550 U.S. at 555.  "A case has 'facial plausibility' when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  "Plausible . . . means more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the court] 'to draw on' [its] 'judicial experience and common sense.'"  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).  The court need not credit "subjective characterizations, optimistic predictions, or problematic suppositions."  United States v. AVX

Corp., 962 F.2d 108, 115 (1st Cir. 1992). "Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Id. (internal quotation omitted).

Affirmative defenses, like the statute of limitations, may be raised under Fed. R. Civ. P. 12(b)(6). Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). "Granting a motion to dismiss based on a statute of limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998). The defense must establish clear facts of untimeliness "on the face of the plaintiff's pleadings." Trans-Spec Truck Serv., 524 F.3d at 320 (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)). Dismissal is appropriate when the dates included in the complaint illustrate that filing occurred after the statute of limitations expired and the "complaint fails to sketch a factual predicate" to justify the application of a different limitations period or equitable estoppel. LaChapelle, 142 F.3d at 509-510.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST THE CITY BECAUSE THEY ARE TIME-BARRED.

### A. Plaintiff's § 1983 claim is time-barred.

Plaintiff's § 1983 claim fails to state a claim upon which relief can be granted because it was untimely filed. Under the borrowing framework of 42 U.S.C. § 1988, Congress "clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule for actions brought under § 1983. Bd. of Regents of Univ. of State of NY v. Tomanio, 446 U.S. 478, 485 (1980) (quoting Robertson v. Wegmann, 436 U.S. 584, 593 (1978)). Thus, because § 1983 has no statute of limitations, courts must use the statute of limitations from the forum where the cause of action arose. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Specifically, in assessing the

timeliness of a § 1983 claim, courts must apply the state's limitations period for general personal injury torts.  Id. at 387; Owens v. Okure, 488 U.S. 235, 249-250 (1989); Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020).  "[A] state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible, in most cases, they are binding rules of law."  Tomanio, 446 U.S. at 484.

Where a state has more than one statute of limitations for personal injury actions, the Supreme Court has directed federal courts to borrow the state's general or residual personal injury statute of limitations for § 1983 claims because it provides the closest state law analog to the broad range of injuries that can arise under § 1983.  See Owens, 488 U.S. at 250 ("applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope").  Here, the general personal injury or tort statute of limitations is Mass. Gen. L. ch. 260, § 2A, which establishes a three-year limitations period.  See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).  Therefore, for Plaintiff's § 1983 claim to be considered timely, it should have been filed within three years from the date the action accrued.

Federal law governs the accrual and commencement of a § 1983 cause of action.  Wallace, 549 U.S. at 388 (accrual); West v. Conrail, 481 U.S. 35, 39 (1987) (commencement).  Under the Federal Rules of Civil Procedure, a "civil action is commenced by filing a complaint with the court."  Fed. R. Civ. P. 3.  A § 1983 claim accrues when the allegedly unconstitutional action is completed, and the plaintiff knows, or should know, of the injury and its connection to the defendant.  Nieves, 241 F.3d at 52; Ouellette, 977 F.3d at 135–36.  In determining the start of accrual, the court should initially identify the actual injury of which the plaintiff complains.  Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005).  "[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become

painful." Chardón v. Fernández, 454 U.S. 6, 8 (1981) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)).

State procedural rules govern the computation of the limitations period, including tolling periods. See Wilson v. Garcia, 471 U.S. 261, 269 (1984); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997); Silva v. City of New Bedford, 602 F.Supp.3d 186, 192 (D. Mass. 2022). "Massachusetts begins counting on the day following the day of the incident, with the last day for filing suit being the anniversary date of the event." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) (applying Mass. R. Civ. P. 6(a) to determine the limitations period for a § 1983 claim). Under 42 U.S.C. § 1988, federal courts are only authorized to disregard otherwise applicable state rules of law if the state law is inconsistent with the Constitution and federal law. Tomanio, 446 U.S. at 485.

Here, the basis for Plaintiff's § 1983 claim is the decedent's death while in BPD custody, so the statute of limitations began to run following his death on May 27, 2019. However, Plaintiff has alleged that acts of deliberate indifference occurred throughout the decedent's detention at the police station. Taking a generous view of this assertion, the completion of the allegedly unconstitutional action could be the officers' discovery that the decedent had died and alternatively, Plaintiff's claim would accrue from May 28, 2019. Regardless of whether the § 1983 claim accrued on May 27 or May 28, 2019, however, the complaint was not timely filed.

The First Circuit has held that tolling periods are governed by state law for a § 1983 action. Benitez-Pons, 136 F.3d at 59; see also Silva, 602 F.Supp.3d at 193 (federal courts must adopt "the coordinate tolling rules" of the forum state if they are not "inconsistent with federal law") (citing Tomanio, 446 U.S. at 484-85). Recently, this Court ruled that the Massachusetts pandemic tolling

order, which was in effect from March 17 to June 30, applies to § 1983 claims.[3]   <u>Silva</u>, 602

F.Supp.3d at 197; <u>Arbogast v. Pfizer</u>, No. 22-CV-10156-DJC, 2023 WL 1864295, at *6 (D. Mass.

Feb. 9, 2023).

Here, the complaint is untimely even if the SJC tolling period applies.   Without the

pandemic tolling, the statute of limitations period would have ended on May 28, 2022, the three-

year anniversary of the accrual event.   Applying the tolling period would extend the Plaintiff's

permissible filing period by 106 days.   In that circumstance, the latest this complaint could have

been filed was September 12, 2022.   Since the Plaintiff filed on Thursday, September 15, 2022,

this claim is untimely.   Thus, regardless of whether the Court applies the SJC tolling period or not,

this claim should be dismissed with prejudice.   <u>See</u> <u>Lattimore v. Dubois</u>, 311 F.3d 46, 53–54 (1st

Cir. 2004), <u>cert. denied</u>, 538 U.S. 966 (2003) (dismissing as untimely a federal habeas petition

filed one day after the expiration of the statute of limitations' grace period); <u>see also</u> <u>United States</u>

<u>v. Locke</u>, 471 U.S. 84, 100–01 (1985) ("If 1-day late filings are acceptable, 10-day late filings

might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected

by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always

fall just on the other side of it . . . .   A filing deadline cannot be complied with, substantially or

---

[3] The City acknowledges the Massachusetts Supreme Judicial Court's decision in <u>Shaw's</u> <u>Supermarkets, Inc. v. Melendez</u>, 173 N.E.3d 356 (Mass. 2021), holding that its own orders concerning court operations during the COVID-19 pandemic operated to toll all statutes of limitations for the period of time between March 17, 2020 and June 30, 2020.   However, those orders were made pursuant to the SJC's "superintendence powers over all of the courts in the Commonwealth" which derive from its inherent constitutional and common law power and the supervisory power over "courts of inferior jurisdiction" expressly granted by the Legislature in Mass. Gen. L. ch. 211, § 3.   The SJC's superintendence powers arguably do not extend to this Court, which is free to enforce the statutory limitations period without regard to the SJC orders concerning the administration of the state courts.   At the same time, the City recognizes the district court's decisions in <u>Silva v. City of New Bedford</u>, 602 F.Supp.3d 186 (D. Mass. 2022), and <u>Arbogast v. Pfizer</u>, No. 22-CV-10156-DJC, 2023 WL 1864295 (D. Mass. Feb. 9, 2023) and analyzes the SJC's tolling order as if it applies to claims in federal court.

otherwise, by filing late-even by one day."); Merriweather v. Memphis, 107 F.3d 396, 400 (6th Cir. 1997) (dismissing § 1983 claim that was filed one day after the statute of limitations period); Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir. 1990), as amended on reh'g (Aug. 29, 1990) (dismissing § 1983 claim that was filed one day late); Salcedo v. Town of Dudley, 629 F.Supp.2d 86, 99 (D. Mass. 2009) (dismissing § 1983 claims based on arrest that were filed two days after statute of limitations period); Pugh v. City of New York, No. 01-CV-0129-ILG, 2002 WL 398804, at *2 (E.D.N.Y. Jan. 15, 2002) (dismissing § 1983 claim that was filed one day after statute of limitations period).

Further, this claim is not subject to equitable tolling.  The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations "may be extended for equitable reasons not acknowledged in the statute creating the limitations period." Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (quoting David v. Hall, 318 F.3d 343, 345–46 (1st Cir. 2004)). Federal law requires a showing of "excusable ignorance of the statute of limitations caused by some misconduct of the defendant." Vistamar, 430 F.3d at 72 (quoting Benitez-Pons, 136 F.3d at 61).  Similarly, under Massachusetts law, a statute of limitations may be tolled "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Abdallah v. Bain Cap. LLC, 880 F.Supp.2d 190, 196 (D. Mass. 2012) (quoting Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998)).  The First Circuit has held that the doctrine should be invoked sparingly in order "[t]o preserve the usefulness of statutes of limitations as rules of law." Bernier, 144 F.3d at 180.  It should apply only when circumstances beyond the plaintiff's control make it impossible to file a complaint within the statute of limitations.  Id.; see also Holloman v. Clarke, 244 F.Supp.3d 223, 228 (D. Mass. 2017) (equitable estoppel should only apply under exceptional circumstances in § 1983 claim).

Here, there are no exceptional circumstances that prevented a timely filing.  Nor does the complaint allege any actions by the City that stopped the Plaintiff from using reasonable diligence to raise this suit within the statute of limitations.  Nothing in the complaint establishes that the City "actually prevented or discouraged" Plaintiff from pursuing the claim before the end of the limitations period.  Vistamar, 430 F.3d at 72.  If Plaintiff failed to act diligently in pursuit of vindicating her rights, the law will not permit extending the statute of limitations to accommodate her.  Id.  Therefore, the Court should not make an exception here.

For the foregoing reasons, because the § 1983 claim was untimely filed, it fails to state a claim upon which relief can be granted.  Thus, the Court should dismiss the § 1983 claim with prejudice.

**B.  Plaintiff's claim under Title II of the ADA is time-barred.**

Because the ADA does not set forth its own statute of limitations period, courts apply one of two alternatives to fill the gap: (1) the applicable state's personal injury statutes; or (2) 28 U.S.C. § 1658's catchall, four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990.  See Mercado v. Puerto Rico, 814 F.3d 581, 584 (1st Cir. 2016).  The ADA was signed into law in July 1990, so 28 U.S.C. § 1658 does not apply to the ADA itself.  However, the ADA was significantly amended in January 2009.  See ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq.  The Supreme Court has held that "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment" of Congress, the four-year limitations period applies.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  "Enactments" include amendments that "creat[e] new rights of action and corresponding liabilities."  Id. at 381–82.

10

In this case, the crux of the plaintiff's Title II claim is that the BPD discriminated against him because of his disability (drug addiction) in failing to provide adequate medical supervision and care to him.  Compl. ¶ 82 (citing 42 U.S.C. §§ 12102, 12131(2)).  However, many plaintiffs were able to successfully sue under Title II based on drug addiction prior to the 2008 amendments. See, e.g., Habit Mgmt., Inc. v. City of Lynn, 235 F. Supp. 2d 28 (D. Mass. 2002); Adams v. Rite Aid of Maine, Inc., 2001 WL 320894 (D. Me. Mar. 5, 2001); Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002); Start, Inc. v. Baltimore County, 295 F. Supp. 2d. 569 (D. Md. 2003).  Accordingly, defendant's ADA claim against the City was not made possible by a post-1990 enactment, and the three-year statute of limitations from G.L. c. 260, § 2A, applies.  The Court should dismiss the ADA claim for being time-barred.

## III.   PLAINTIFF'S CLAIMS AGAINST THE CITY MUST BE DISMISSED FOR FAILURE TO PLEAD VIABLE CLAIMS UNDER 42 U.S.C. § 1983 OR THE AMERICANS WITH DISABILITIES ACT.

In addition to the untimeliness of Plaintiff's Complaint, Plaintiff fails to allege sufficient factual content to support either her Fourteenth Amendment constitutional claim (Count I) or her Americans with Disabilities Act (ADA) claim (Count II).  Thus, her Complaint against the City must be dismissed.

### A.  Plaintiff has failed to properly plead a 42 U.S.C. § 1983 action against the City for a Fourteenth Amendment violation (Count I).

By Count I, Plaintiff asserts a § 1983 claim under the Fourteenth Amendment against the City.  Based on the factual allegations in the Complaint, Plaintiff has failed to state a claim upon which relief can be granted.

42 U.S.C. § 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights."  McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).  Claims seeking to hold a local government entity liable under § 1983, referred to as Monell

claims, must be for the municipality's own misconduct (rather than under a theory of vicarious liability for municipal employees).  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To plead a Monell claim for a constitutional violation, the plaintiff must allege (1) an unconstitutional "policy or custom," and (2) that this policy or custom was "the moving force" behind the alleged injury.  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997).  A municipality violates the Fourteenth Amendment under Monell if it adopts a policy that codifies a practice of "deliberate indifference" to a pretrial detainee's constitutional rights.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Here, Plaintiff pleads two theories to argue that the decedent's death was caused by an unconstitutional policy or custom by the City.  First, Plaintiff alleges that the City failed to adopt a policy that provides medical care to persons showing signs of opioid intoxication after arrest. Second, Plaintiff maintains that the BPD improperly trains and monitors police officers.  Plaintiff has failed to allege sufficient facts to support either theory.

1. **Plaintiff has not alleged facts showing that the BPD adopted a standing custom or policy that deprived the decedent of his Fourteenth Amendment Rights.**

To plead a Monell claim for a constitutional violation, the plaintiff must allege (1) an unconstitutional "policy or custom," and (2) that this policy or custom was "the moving force" behind the alleged injury.  Brown, 520 U.S. at 403–05.  Plaintiff has failed to allege a City policy or custom that deprives individuals of their Fourteenth Amendment rights.  Further, Plaintiff has not shown that such a policy or custom was the "moving force" behind the decedent's death.

   a. Plaintiff has failed to show that the City's policy on treatment of persons in custody showing signs of opioid intoxication violates the Fourteenth Amendment.

To show an unconstitutional policy or custom due to failure to adopt a policy (as opposed to an affirmative policy), the plaintiff must show that the city's decision not to adopt a policy was

"an intentional choice, not merely an unintentionally negligent oversight."  Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992).  "[E]vidence of a single incident is insufficient, in and of itself, to establish a municipal 'custom or usage' within the meaning of Monell."  Mahan v. Plymouth Cnty. House of Corrections, 64 F.3d 14, 16–17 (1st Cir. 1995) (rejecting Monell claim because plaintiff brought "no evidence of prior incidents of inadequate investigation" nor "direct evidence of improper investigatory methods or practices" by the police department); Ringuette v. City of Fall River, 888 F.Supp.258, 273 (D. Mass. 1995) ("There is no evidence of any failure to detect a drug overdose or illness after 1985 for those in protective custody which would have alerted [the official] to any systemic monitoring problem.").  But see Connick v. Thompson, 563 U.S. 51, 64 (2011) (noting that a showing of prior incidents is not necessary if the constitutional deficiency of the policy is "patently obvious"); Canton, 489 U.S. at 390 n.10 (noting the same when constitutional violations as a result of a policy are known with "moral certainty").  Courts generally construe "deliberate indifference" to be a high bar to avoid holding municipalities vicariously liable for aberrant acts by government employees.  See Brown, 520 U.S. at 415.

Here, Plaintiff does not allege sufficient facts showing that the City has an unconstitutional policy or custom under Monell.  First, Plaintiff fails to demonstrate any unconstitutional prior practice by the City.  The Complaint merely asserts vague conclusory allegations that there have been prior incidents of overdose at the District 4 station.  See id. ¶¶ 2, 59.  Plaintiff does not elaborate on any details of these incidents, such as the time frame, the frequency, the symptoms displayed by the decedents, or the circumstances leading up to the alleged overdoses.  These details, however, are required to discern whether the City was put on notice of a systemic problem of overdoses, and thus whether the City made a conscious choice to disregard the incidents.  See

Canton, 489 U.S. at 387.  As it stands, the Complaint can only support that the decedent's death, however unfortunate, is "evidence of a single incident."  Mahan, 64 F.3d at 16–17.

Second, the Complaint fails to address the BPD's existing policy for protecting the health of persons in custody.  BPD Rule 318, § 3, directs officers to provide "immediate attention" to detainees displaying "unusual appearance or behavior" or who are "unconscious."  Compl. ¶ 30. This policy shows that the City, far from being deliberately indifferent, is conscious of and responsive to the health and safety needs of persons held in custody.  Plaintiff's Complaint recognizes the existence of this policy, id. ¶ 30, but nevertheless concludes it is deficient without explaining why.  The Complaint merely argues that "no . . . protocols existed regarding the prevention of opioid overdose for people showing signs of drug intoxication."  Id. ¶ 33.  The connection between these two arguments appears to be that Rule 318, § 3, is deficient because it is too general — that is, it does not provide specifically for drug intoxication.  Id.  However, a policy that is simply insufficiently specific does not rise to the level of deliberate indifference to constitutional rights as required to sustain a Monell claim.  See Sims v. City of Jasper, 543 F.Supp.3d 428, 448 (E.D. Tex. 2021) (noting the police department "did have policies in place for the safe incarceration of inmates" including "summon[ing] paramedics or EMS if they experience 'doubt about the health or medical conditions of a detainee' or if the detainee becomes unresponsive or requests medical assistance" and that "[t]his policy cover[ed] pretrial detainees placed in the detox cell," and thus the plaintiff had not adequately shown deliberate indifference under Monell); cf. McDonald-Witherspoon v. City of Philadelphia, 481 F.Supp.3d 424, 424 (E.D. Pa. 2020) (holding that a prison policy that did not allow dispersing drugs to ease inmates' withdrawal symptoms was "designed to prevent harms" and thus not unconstitutional under § 1983).

14

Finally, Plaintiff asserts, without support, that the BPD's officer-visitation policy instructs officers to walk by cells without "looking in" to check on the status of persons held in custody. Compl. ¶¶ 27–28.  BPD Rule 318, § 14, requires officers to "visit, or cause to be visited, all persons in their custody at least once every fifteen minutes," and to "ensure that each visit is recorded in the Prisoner Inspection Record."  BPD Rule 318, § 14.  The Complaint's characterization of the word "visit" as excluding "looking into" is unsupported by any factual evidence or legal authority. Absent supporting evidence to the contrary, the allegations of the Complaint establish, at best, that individual officers negligently failed to adhere to the BPD's officer-visitation requirements. Plaintiff, however, cannot satisfy the requirements of <u>Monell</u> liability through showing only negligence of lower officials, as negligence does not rise to the level of deliberate indifference. <u>See</u> <u>Canton</u>, 489 U.S. at 391 (describing that liability does not attach when "an otherwise sound program has occasionally been negligently administered").  Plaintiff has thus failed to show that the City maintains an unconstitutionally deficient custom or practice.

   b. <u>Even setting aside the first prong of Plaintiff's claim against the City, Plaintiff has failed to show that any policy of the City was the direct cause of the decedent's death.</u>

A plaintiff must "show 'both the existence of a policy or custom <u>and</u> a causal link between that policy and the constitutional harm.'"  <u>Lucia v. Peabody</u>, 971 F.Supp.2d 153, 167 (D. Mass. 2013) (quoting <u>Santiago v. Fenton</u>, 891 F.2d 373, 381 (1st Cir. 1989)) (emphasis added).  "This connection needs to rise above a mere but/for coupling between cause and effect."  <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1162 (1st Cir. 1981) (citing <u>Canton</u>, 489 U.S. at 1204–05; <u>see</u> <u>Stockton v. Milwaukee County</u>, 44 F.4th 605, 618 (7th Cir. 2022).

Here, Plaintiff's arguments fail to establish that the City's policies caused the decedent's death.  The Complaint appears to suggest that there were two points in time where BPD officers

should have intervened but did not.  First, Plaintiff alleges that the decedent "showed obvious signs of opioid over-intoxication" during booking, but the officers did not seek a medical evaluation for him.  Id. ¶ 39.  However, this claim about the decedent's external appearance is entirely conclusory and devoid of details necessary to make the inference that the officers both realized the decedent was intoxicated during booking <u>and</u> made the deliberate choice under BPD policy not to seek a medical evaluation for him.  The Complaint does not state anything about the decedent's appearance (such as his facial expressions, gait, or posture) nor his behavior (such as his responsiveness to cues or his verbal clarity) that could inform whether a reasonable officer would be alert to the fact he was overdosing on opioids.  Absent such details, Plaintiff cannot show that the BPD's policy was the "moving force" behind the officers' decision not to seek a medical evaluation for the decedent.

Second, as discussed previously, Plaintiff alleges that Rule 318, § 14, does not specifically require officers to "look into" cells during visits.  Compl. ¶¶ 27–28.  Even putting aside the lack of support for Plaintiff's characterization of Rule 318, § 14, there is no guarantee — or even a strong likelihood — that officers would have been able to notice that the decedent had overdosed by looking inside his cell.  Cf. <u>Stockton</u>, 44 F.4th at 618 (rejecting <u>Monell</u> liability because plaintiff failed to establish that he would have been diagnosed with infective endocarditis even if he were seen by medical staff, as he alleged no symptoms at the time beyond a sick-call slip).  According to the facts alleged in the Complaint, the decedent was lying face-down on the cell bench from approximately 7:00 PM to 8:00 AM.  Compl. ¶¶ 61, 64, 67, 69.  But lying face-down on a bench is not an abnormal nor uncomfortable physical position for sleeping, nor would it be unusual for a person to be sleeping during those hours.  Thus, even with a policy that requires officers to look

into a cell, an officer could have mistaken the decedent for resting and still have failed to notice he had overdosed.

Plaintiff's Complaint, accordingly, fails to state a <u>Monell</u> claim against the BPD for a violation of the decedent's Fourteenth Amendment Due Process Clause rights because it pleads no factual allegations plausibly suggesting that the BPD had a constitutionally deficient policy.

### 2.  Plaintiff has not alleged facts showing that the City adopted an unconstitutionally deficient officer-training policy.

A plaintiff can sustain a § 1983 <u>Monell</u> claim against a municipal policy for failure to properly train municipal employees. <u>Canton</u>, 489 U.S. at 1205.  The plaintiff must show that the municipality is "obliged to provide its police officers with some medical training beyond the [training] that they now receive." <u>Ringuette</u>, 888 F.Supp at 271.  To do so, a plaintiff must show that a duty actually existed — that is, that there was an "obvious need" for higher-level training in the signs of drug overdose and/or a "significant risk" to persons in custody in absence of such training. <u>Id.</u>  Further, the plaintiff must show that under a proper training policy, a reasonable officer "would have known, or would have to have been willfully blind not to have noticed, that the decedent posed a strong risk" of the type of injury alleged by the plaintiff. <u>Manarite By and Through Manarite v. City of Springfield</u>, 957 F. 2d 953, 959 (1st Cir. 1992).  In general, a <u>Monell</u> claim is "most tenuous where [it] turns on a failure to train." <u>Connick</u>, 563 U.S. at 61; <u>see</u> <u>also</u> <u>Young v. City of Providence</u>, 404 F.3d 4, 26–27 (1st Cir. 2005) (holding that, under <u>Monell</u>, "any proper allegation of failure to train . . . must allege that [the officer's] lack of training caused him to take actions that were objectively unreasonable" and that "the identified deficiency in [the training program was] closely related to the ultimate injury").

Here, Plaintiff fails to allege facts supporting a plausible claim that the City failed to properly train its officers on responding to the medical needs of detainees who are drug users.

17

Plaintiff has not alleged any evidence that the BPD fell below statewide policies for medical training in recognizing drug overdoses, nor any national standards. See Ringuette, 888 F.Supp at 271. Outside of conclusory allegations that the District 4 station had prior incidents of overdose,[4] Plaintiff has not alleged any facts that demonstrate an "obvious need" for higher-level training in the signs of drug overdose and/or a "significant risk" to persons in custody in absence of such training. Id.

Further, Plaintiff has also failed to show that the lack of training caused the officers to take actions that were objectively unreasonable, or that a properly trained officer would have acted differently. Cf. Manarite, 957 F.2d at 959 (rejecting Monell liability because plaintiff failed to show that a properly trained officer would recognize suicide risk of decedent who exhibited no external manifestations of suicidal tendencies). The Complaint alleges only that after ingestion, the decedent was lying face-down on the cell bench during nighttime hours through breakfast and an alarm bell. Compl. ¶¶ 64, 67. Plaintiff has not shown how a properly trained officer would have been able to distinguish the decedent's behavior from a non-intoxicated inmate who was simply resting. Even assuming the truth of all of Plaintiff's allegations, however vague and conclusory, they do not suffice to state a plausible § 1983 claim against the BPD under the Fourteenth Amendment. Accordingly, the claim must be dismissed.

**C. The Plaintiff has failed to properly plead a claim against the City for a violation of Title II of the Americans with Disabilities Act (Count II).**

By Count II, Plaintiff asserts a § 1983 claim under Title II of the ADA. As with Count I, based on the factual allegations pleaded in the Complaint, Plaintiff has failed to state a claim upon which relief can be granted against the City.

---

[4] For the same reason (conclusory allegations of prior incidents of overdose), Plaintiff fails to plead a Monell claim based on failure to supervise and discipline.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A plaintiff seeking relief under Title II "must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000).  The plaintiff "must provide sufficient factual allegations to create a reasonable inference that the medical treatment decisions he challenges were motivated by 'animus, fear, or apathetic attitudes' toward his disability." Messere v. Clarke, 2015 WL 5609959, at *12 (D. Mass. Sept. 22, 2015) (citing Buchanan v. Maine, 469 F.3d 158, 174–75 (1st Cir. 2006)).

Here, Plaintiff has failed to allege sufficient facts supporting a Title II ADA claim against the City.  Plaintiff claims that the City intentionally discriminates against drug users because of its failure to adopt a policy explicitly directing medical care for inmates who are intoxicated by drugs. In support of her claim, she points to analogous BPD policies directing officers to provide close monitoring and/or immediate medical care for inmates with "visible injuries" like open wounds, Compl. ¶ 30, or inmates displaying indications that they may attempt to commit suicide, id. ¶ 32. However, Plaintiff fails to show that the City's lack of a similar express policy for inmates with opioid addiction was animated by "animus, fear, or, apathetic attitudes."  Buchanan, 469 F.3d at 174–75 (rejecting plaintiff's ADA claims because he did not adequately show his requested additional services, such as increased frequency of checkups, for his disability were necessary, and thus that the state deliberately denied him access to them).  In fact, the Complaint itself concedes

that BPD Rule 318, § 3, requires officers to provide "immediate attention" to prisoners with "[a]ny unusual appearance or behavior" or who are "unconscious."  Compl. ¶ 30.  This language would seem to require officers to also provide immediate care to inmates displaying unusual behavior because of intoxication due to drugs, as it contains no carve-out for overdoses.  Plaintiff provides no evidence that the BPD has failed to provide medical care specifically to opioid users despite Rule 318, § 3, or that the BPD did provide services to drug users but discriminated among categories of users in doing so.  See Buchanan, 439 F.3d at 175 (rejecting plaintiff's claims because of lack of evidence that the state refused medical checkups, assistance, or crisis intervention specifically to the disabled).  Thus, Plaintiff fails to allege sufficient facts supporting the claim that the officers intentionally disregarded the decedent's condition because he used opioids.

## **CONCLUSION**

For the foregoing reasons, the Defendant City of Boston respectfully requests that this Honorable Court dismiss all claims brought against it in the Plaintiff's Complaint.

Respectfully submitted,

Defendant,
CITY OF BOSTON
By its attorneys,


Adam Cederbaum
Corporation Counsel


/s/ *Randall Maas*

Randall Maas BBO#684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
Randall.Maas@boston.gov

## __CERTIFICATE OF SERVICE__

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 10, 2023.


April 10, 2023                                    /s/ *Randall Maas*
Date                                                   Randall Maas