**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO.1:22-cv-11437-DJC

MICHELLE GEIGEL, as administrator of the estate of CRISTHIAN GEIGEL,

        Plaintiff,

v.

BOSTON POLICE DEPARTMENT, ISMAEL ALMEIDA, and JOHN/JANE DOES NOS. 1–2

        Defendants.

**DEFENDANT ISMAEL ALMEIDA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Officer Ismael Almeida ("Officer Almeida") respectfully moves this Honorable Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts I and III of Plaintiff's Complaint ("Complaint") against him.  The case arises from the May 27, 2019, death of Cristhian Geigel ("the decedent") by opioid overdose while he was held in custody at the District 4 police station of the Boston Police Department ("BPD").  Plaintiff alleges a 42 U.S.C. § 1983 claim and a wrongful death claim under Mass. Gen. Laws ch. 229, § 2 against Officer Almeida.  As grounds for this motion, Officer Almeida states:

1) Counts I and III are time-barred because the statute of limitations for a § 1983 claim and a wrongful death claim under Mass. Gen. Laws ch. 229, § 2 is three years, and the Plaintiff filed her complaint more than three years after the cause of action accrued.

2) Count III against Officer Almeida in his individual capacity is barred by the Mass. Gen. Laws ch. 258, the Massachusetts Tort Claims Act.

1

3) Counts I and III are insufficiently pleaded because they set forth conclusory allegations without any factual support, fail to establish that any action of Officer Almeida caused the decedent's death, fail to establish that Officer Almeida was or should have been aware of a substantial risk of serious harm to the decedent, and fail to establish that Officer Almeida exhibited deliberate indifference.

**FACTUAL ALLEGATIONS[1]**

The decedent was a 39-year-old resident of Massachusetts who had been chronically addicted to opioids since high school. See Compl. ¶¶ 15, 24. Plaintiff is the decedent's daughter and the administrator of his estate. See id. ¶ 17. On May 27, 2019, the BPD arrested the decedent in a part of Boston known as Mass and Cass, "an area known as the epicenter of the opioid epidemic" and where BPD officers often arrest/detain intoxicated people. Id. ¶¶ 2, 35, 59. The officers booked the decedent at the District 4 station, where the Complaint alleges prior incidents of overdose occurred. See id. ¶¶ 2, 59. After booking, the decedent was placed in cell 16. Id. ¶ 2.

Later that day in his cell, between 6:00 p.m. and 6:30, the decedent repeatedly ingested drugs. Id. ¶ 61. Minutes after ingestion, his body shook and his limbs flailed before he lay face down on the cell bench. Id. ¶ 62. Plaintiff alleges that the decedent "visibly struggled to breathe" for thirteen minutes. Id. Around 6:40 PM, the decedent took his last breath. Id. ¶ 63. He then continued lying down on the cell bench throughout the night without changing positions. Id. ¶¶ 46, 64, 6669. Between 12:29 a.m. and 4:00 a.m., Officer Almeida was assigned to the booking desk of the District 4 station. Id. ¶ 66. Officer Almeida walked by the decedent's cell fourteen times within the that time period. Id. Plaintiff alleges that Officer Almeida never looked into the

---

[1] For the limited purposes of the instant motion, Officer Almeida accepts the nonconclusory facts alleged in the Complaint as true.

decedent's cell.  Id.  At approximately 4:00 a.m., a fire alarm rang, and Officer Almeida walked

by the decedent's cell.  Id. ¶ 67.  Officer Almeida did not look into the decedent's cell.  Id.  The

decedent remained lying face down on the cell bench.  Id. ¶¶ 64, 67.  At approximately 8:00 a.m.,

Officer Kevin Butcher attempted to wake the decedent for a scheduled court hearing.  Id. ¶ 69.  At

that time, Officer Butcher discovered that the decedent was stiff and not moving.  Id.  The officers

called Emergency Medical Services, who, upon arrival, did not attempt to resuscitate the decedent

because of "obvious signs of death."  Id.

## ARGUMENT

### I.    STANDARD OF REVIEW

A complaint or count therein must be dismissed if, after accepting all well-pleaded facts as

true and drawing all reasonable inferences in favor of the plaintiff, it fails to state a claim upon

which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To support a claim, the plaintiff must

set forth "factual allegations, either direct or inferential, respecting each material element."

Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  Mere recitals of the elements of a

cause of action, supported only by conclusory statements, do not suffice.  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all the allegations in the complaint are true, even if doubtful in fact.  Twombly, 550 U.S. at

555.  "A case has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "Plausible . . . means something more than

merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that

compels [the court] 'to draw on' [its] 'judicial experience and common sense.'"  Schatz v.

Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at

679).    The court need not credit "subjective characterizations, optimistic predictions, or problematic suppositions."  United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). "Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference."  Id. (internal quotation omitted).

Affirmative defenses, like the statute of limitations, may be raised under Fed. R. Civ. P. 12(b)(6).  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). "Granting a motion to dismiss based on a [statute of] limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred."  LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).  The defense must establish clear facts of untimeliness "on the face of the plaintiff's pleadings."  Trans-Spec Truck Serv., 524 F.3d at 320 (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)).  Dismissal is appropriate when the dates included in the complaint illustrate that filing occurred after the statute of limitations expired and the complaint "fail[s] to sketch a factual predicate" to justify the application of a different limitations period or equitable estoppel.  LaChapelle, 142 F.3d at 509-10.

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST OFFICER ALMEIDA BECAUSE THEY ARE TIME-BARRED.

### A.  Plaintiff's § 1983 claim is time-barred.

Plaintiff's § 1983 claim fails to state a claim upon which relief can be granted because it was untimely filed.  Under the borrowing framework of 42 U.S.C. § 1988, Congress "clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule for actions brought under § 1983.  Bd. of Regents of Univ. of State of NY v. Tomanio, 446 U.S. 478, 485 (1980) (quoting Robertson v. Wegmann, 436 U.S. 584, 593 (1978)).  Thus, because § 1983 has no statute of limitations, courts must use the statute of limitations from the forum where the cause of

action arose. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Specifically, in assessing the timeliness of a § 1983 claim, courts must apply the state's limitations period for general personal injury torts. Id. at 387; Owens v. Okure, 488 U.S. 235, 249-50 (1989); Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020). "[A] state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible. In most cases, they are binding rules of law." Tomanio, 446 U.S. at 484.

Where a state has more than one statute of limitations for personal injury actions, the Supreme Court has directed federal courts to borrow the state's general or residual personal injury statute of limitations for § 1983 claims because it provides the closest state law analog to the broad range of injuries that can arise under § 1983. See Owens, 488 U.S. at 249 ("applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope"). Here, the general personal injury or tort statute of limitations is Mass. Gen. L. ch. 260, § 2A, which establishes a three-year limitations period. See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Therefore, for Plaintiff's § 1983 claim to be considered timely, it should have been filed within three years from the date the action accrued.

Federal law governs the accrual and commencement of a § 1983 cause of action. Wallace, 549 U.S. at 388 (accrual); West v. Conrail, 481 U.S. 35, 39 (1987) (commencement). Under the Federal Rules of Civil Procedure, a "civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. A § 1983 claim accrues when the allegedly unconstitutional action is completed, and the plaintiff knows, or should know, of the injury and its connection to the defendant. Nieves, 241 F.3d at 52; Ouellette, 977 F.3d at 135–36. In determining the start of accrual, the court should initially identify the actual injury of which the plaintiff complains. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005). "[T]he proper focus is on

the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardón v. Fernández, 454 U.S. 6, 8 (1981) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)).

State procedural rules govern the computation of the limitations period, including tolling periods. See Wilson v. Garcia, 471 U.S. 261, 269 (1985); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997); Silva v. City of New Bedford, 602 F. Supp. 3d 186, 191-92 (D. Mass. 2022). "Massachusetts begins counting on the day following the day of the incident, with the last day for filing suit being the anniversary date of the event." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003) (applying Mass. R. Civ. P. 6(a) to determine the limitations period for a § 1983 claim). Under 42 U.S.C. § 1988, federal courts are only authorized to disregard otherwise applicable state rules of law if the state law is inconsistent with the Constitution and federal law. Tomanio, 446 U.S. at 485.

Here, the basis for Plaintiff's § 1983 claim is the decedent's death while in BPD custody, so the statute of limitations began to run following his death on May 27, 2019. However, Plaintiff has alleged that acts of deliberate indifference occurred throughout the decedent's detention at the police station. Taking a generous view of this assertion, the completion of the allegedly unconstitutional action could be the officers' discovery that the decedent had died and alternatively, Plaintiff's claim would accrue from May 28, 2019. Regardless of whether the § 1983 claim accrued on May 27 or May 28, 2019, however, the complaint was not timely filed.

The First Circuit has held that tolling periods are governed by state law for a § 1983 action. Benitez-Pons v. Com. of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998); see also Silva, 602 F. Supp. 3d at 193 (federal courts must adopt the "coordinate tolling rules" of the forum state if they are not "inconsistent with federal law") (citing Tomanio, 446 U.S. at 484-85). Recently, this Court ruled

that the Massachusetts pandemic tolling order, which was in effect from March 17 to June 30, applies to § 1983 claims.[2]  Silva, 602 F. Supp. 3d at 197; Arbogast v. Pfizer, No. 22-CV-10156-DJC, 2023 WL 1864295, at *6 (D. Mass. Feb. 9, 2023).

Here, the complaint is untimely even if the SJC tolling period applies.  Without the pandemic tolling, the statute of limitations period would have ended on May 28, 2022, the three-year anniversary of the accrual event.  Applying the tolling period would extend the Plaintiff's permissible filing period by 106 days.  In that circumstance, the latest this complaint could have been filed was September 12, 2022.  Since the Plaintiff filed on Thursday, September 15, 2022, this claim is untimely.  Thus, regardless of whether the Court applies the SJC tolling period or not, this claim should be dismissed with prejudice.  See Lattimore v. Dubois, 311 F.3d 46, 53–54 (1st Cir. 2002), cert. denied, 538 U.S. 966 (2003) (dismissing as untimely a federal habeas petition filed one day after the expiration of the statute of limitations' grace period); see also United States v. Locke, 471 U.S. 84, 100–01 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it . . . .  A filing deadline cannot be complied with, substantially or

---

[2] Officer Almeida acknowledges the Massachusetts Supreme Judicial Court's decision in Shaw's Supermarkets, Inc. v. Melendez, 173 N.E.3d 356 (Mass. 2021), holding that its own orders concerning court operations during the COVID-19 pandemic operated to toll all statutes of limitations for the period of time between March 17, 2020 and June 30, 2020.  However, those orders were made pursuant to the SJC's "superintendence powers over all of the courts in the Commonwealth" which derive from its inherent constitutional and common law power and the supervisory power over "courts of inferior jurisdiction" expressly granted by the Legislature in Mass. Gen. L. ch. 211, § 3.  The SJC's superintendence powers arguably do not extend to this Court, which is free to enforce the statutory limitations period without regard to the SJC orders concerning the administration of the state courts.  At the same time, Officer Almeida recognizes the district court's decisions in Silva v. City of New Bedford, 602 F. Supp. 3d 186 (D. Mass. 2022), and Arbogast v. Pfizer, No. 22-CV-10156-DJC, 2023 WL 1864295 (D. Mass. Feb. 9, 2023) and analyzes the SJC's tolling order as if it applies to claims in federal court.

otherwise, by filing late—even by one day."); Merriweather v. Memphis, 107 F.3d 396, 400 (6th Cir. 1997) (dismissing § 1983 claim that was filed one day after the statute of limitations period); Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir. 1990), as amended on reh'g (Aug. 29, 1990) (dismissing § 1983 claim that was filed one day late); Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 99 (D. Mass. 2009) (dismissing § 1983 claims based on arrest that were filed two days after statute of limitations period); Pugh v. City of New York, No. 01-CV-0129-ILG, 2002 WL 398804, at *2 (E.D.N.Y. Jan. 15, 2002) (dismissing § 1983 claim that was filed one day after statute of limitations period).

Further, this claim is not subject to equitable tolling.  The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations "may be extended for equitable reasons not acknowledged in the statute creating the limitations period."  Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (quoting David v. Hall, 318 F.3d 343, 345–46 (1st Cir. 2003)). Federal law requires a showing of "excusable ignorance of the statute of limitations caused by some misconduct of the defendant."  Vistamar, 430 F.3d at 72 (quoting Benitez-Pons, 136 F.3d at 61).  Similarly, under Massachusetts law, a statute of limitations may be tolled "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Abdallah v. Bain Cap. LLC, 880 F. Supp. 2d 190, 196 (D. Mass. 2012) (quoting Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998)).  The First Circuit has held that the doctrine should be invoked sparingly in order "[t]o preserve the usefulness of statutes of limitations as rules of law." Abdallah, 880 F. Supp. 2d at 197 (quoting Neverson, 366 F.3d at 42).  It should apply only when circumstances beyond the plaintiff's control make it impossible to file a complaint within the statute of limitations.  Abdallah, 880 F. Supp. 2d at 197; see also Holloman v. Clarke, 244 F. Supp.

3d 223, 228 (D. Mass. 2017) (equitable estoppel should only apply under exceptional circumstances in § 1983 claim).

Here, there are no exceptional circumstances that prevented a timely filing. Nor does the complaint allege any actions by Officer Almeida that stopped the Plaintiff from using reasonable diligence to raise this suit within the statute of limitations. Nothing in the complaint establishes that Officer Almeida "actually prevented or discouraged" Plaintiff from pursuing the claim before the end of the limitations period. Vistamar, 430 F.3d at 72. If Plaintiff failed to act diligently in pursuit of vindicating her rights, the law will not permit extending the statute of limitations to accommodate her. Id. Therefore, the Court should not make an exception here.

In her responses to the City of Boston's motion to dismiss, Plaintiff has argued that she met the statute of limitations deadline because the Complaint and Civil Action Cover Sheet are internally dated September 7, 2022, and because she seems to have paid the filing fee on September 7, 2022, as well. See ECF Nos. 11, 22. But crucially, the available evidence—including the docket entries and the automatically-generated timestamp—indicate that the Complaint was not filed until September 15, 2022. Pursuant to Fed. R. Civ. P. 3, "[a] civil action is commenced by filing a complaint with the court." According to the U.S. District Court's General Order regarding Electronic Case Filing, Section G.1, electronic transmission of a document to the ECF/CM system, together with the transmission of the Notice of Electronic Filing by the Court at the completion of the transaction, constitutes filing for all purposes under the Federal Rules of Procedure. Unless and until Plaintiff can produce a Notice of Electronic Filing showing that her Complaint was filed earlier than September 12, 2022, the claims are barred by the statute of limitations. While Plaintiff may have drafted the documents and paid the filing fee on September 7, 2022, it is clear that for

whatever reason, she failed to electronically file for a week, in the process missing the outer end of the statute of limitations.  Accordingly, the claims are barred.

For the foregoing reasons, because the § 1983 claim was untimely filed, it fails to state a claim upon which relief can be granted.  Thus, the Court should dismiss the § 1983 claim with prejudice.

### B.  Plaintiff's wrongful death claim is time-barred.

Plaintiff's wrongful death claim fails to state a claim upon which relief can be granted because it was untimely filed.  Under Mass. Gen. Laws ch. 229, § 2, wrongful death claims must "be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action."  The decedent died on May 27, 2019.  See Compl. ¶¶ 61-63.  On that date, the statute of limitations began to run, as the explicit language of Mass. Gen. Laws ch. 229, § 2 provides that the date of death begins the running of the statute of limitations.  Without the SJC tolling period, the statute of limitations period would have ended on May 27, 2022, the three-year anniversary of the accrual event.  Again, the complaint is untimely even if the SJC tolling period applies as the additional 106 days would require the Plaintiff to file by September 12, 2022.

The wrongful death statute adopts the "discovery rule" in its language providing that claims must be commenced "within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action."  Mass. Gen. Laws ch. 229, § 2; Heinrich ex rel. Heinrich v. Sweet, 62 F. Supp. 2d 282, 304-05 (D. Mass. 1999). Similar to a § 1983 claim, "[a]ccrual [of a wrongful death claim] is based on a plaintiff's knowledge of facts sufficient to give rise to a belief that the

10

government – not any particular agency of the government – caused the injury." See Barrett ex

rel. Estate of Barrett v. United States, 462 F.3d 28, 40 (1st Cir. 2006); Nieves, 241 F.3d at 51;

Mass. Gen. Laws ch. 260, § 10.  As such, although "[a] claim does not accrue when a person has

a mere hunch, hint, suspicion, or rumor of a claim," Barrett 462 F.3d at 39 (citing McIntyre v.

United States, 367 F.3d 38, 52 (1st Cir. 2004)), "conclusive knowledge is not necessary."  Barrett

462 F.3d at 39 (citing Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003).  Similar to the §

1983 claim, the latest the wrongful death claim could have been filed was September 12, 2022.

For the foregoing reasons, because the wrongful death claim under Mass. Gen. Laws ch.

229, § 2, was untimely filed, it fails to state a claim upon which relief can be granted.  Thus, the

Court should dismiss the wrongful death claim with prejudice.

III.    **THE COURT SHOULD DISMISS PLAINTIFF'S WRONGFUL DEATH CLAIM AGAINST OFFICER ALMEIDA BECAUSE IT IS BARRED BY THE MASSACHUSETTS TORT CLAIMS ACT.**

In Count III, Plaintiff has brought a wrongful death claim against Officer Almeida in his

individual capacity under Mass. Gen. Laws ch. 229, § 2.  Compl. ¶¶ 92-94. Mass. Gen. Laws ch.

229, § 2 provides that "[a] person who (1) by his negligence causes the death of a person, or (2)

by willful, wanton or reckless act causes the death of a person under such circumstances that the

deceased could have recovered damages for personal injuries if his death had not resulted, … shall

be liable in damages."  Advancing what is essentially a wrongful death claim based on negligence,

Plaintiff alleges that the Defendants' "deliberate, intentional, and unreasonable failure to seek a

medical evaluation for [the decedent], obtain outside medical treatment for [the decedent], or

provide [the decedent] medical care themselves caused [the decedent's] death.  Compl. ¶ 54.

However, Count III must fail because Officer Almeida is a public employee who was acting in the

scope of his employment at the time of decedent's death.  Mass. Gen. Laws ch. 258, § 2, the

Massachusetts Tort Claims Act ("MTCA"), provides that "[p]ublic employers shall be liable for

11

… personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." The MTCA "shields public employees from personal liability for negligent conduct" in their individual capacities. Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). Further, under the MTCA, "a public employee is not liable for 'personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.'" Taplin v. Town of Chatham, 390 Mass. 1, 2 (1983) (quoting the statute). As the Complaint indicates that Officer Almeida was acting within the scope of his employment as a police officer for the City of Boston on May 28, 2019, Count III is barred by the MTCA.

For the foregoing reasons, because the wrongful death claim against Officer Almeida under Mass. Gen. Laws ch. 229, § 2, is barred by the MTCA, it fails to state a claim upon which relief can be granted. Thus, the Court should dismiss the wrongful death claim with prejudice.

IV.     **PLAINTIFF'S CLAIMS AGAINST OFFICER ALMEIDA MUST BE DISMISSED FOR FAILURE TO PLEAD VIABLE CLAIMS UNDER 42 U.S.C. § 1983 OR MASS. GEN. LAWS CH. 229, § 2.**

In addition to both the § 1983 claim and the wrongful death claim being time-barred and the wrongful death claim being barred by the MTCA, Plaintiff fails to allege sufficient factual content to support either her Fourteenth Amendment constitutional claim (Count I) or her wrongful death claim (Count III). Thus, her Complaint against Officer Almeida must be dismissed.

A.  **The Complaint fails to state a Fourteenth Amendment claim against Officer Almeida because the well-pleaded allegations in the Complaint do not establish that Officer Almeida's conduct caused the decedent's death, that Officer Almeida was or reasonably should have been aware of the risk of substantial harm to the decedent, or that Officer Almeida exhibited deliberate indifference to the decedent's medical need).**

42 U.S.C. § 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir.

1995).  In a § 1983 claim alleging failure to provide medical care in violation of the Fourteenth Amendment of the Constitution, "the care 'must involve acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  Brace v. Massachusetts, 673 F. Supp. 2d 36, 40 (D. Mass. 2009) (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006)).  To prove a Fourteenth Amendment violation, a plaintiff must show: (1) that there was a serious medical need; and (2) that officers exhibited deliberate indifference to this medical need. See Brace, 673 F. Supp. 2d at 40 (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)).  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).  With respect to the second element, a showing of deliberate indifference "requires more than mere inadvertence or negligence.  Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded."  Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 71 (D. Mass. 2012) (citing Brace, 673 F. Supp. 2d at 41).  "To establish deliberate indifference, the plaintiff must prove that the officers 'had a culpable state of mind and intended wantonly to inflict pain.'"  LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 140 (D. Mass. 2007) (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

1.   The Complaint also fails to establish that Officer Almeida's conduct caused the decedent's death.

The Complaint asserts that "[d]efendants' refusal to seek a medical evaluation, obtain outside medical treatment, or provide [the decedent] with medical care themselves caused [the decedent] to die."  Compl. ¶ 76.  Indeed, some circuits explicitly identify causation as a separate element of § 1983 deliberate indifference claims generally.  See Danley v. Allen, 540 F.3d 1298,

13

1310 (11th Cir. 2008); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).   However, the

Complaint fails to provide any support to its claim of causation.  According to the Complaint, the

decedent ingested drugs in his cell between 6:00 p.m. and 6:30 p.m. on May 27, 2019.  Compl.

¶ 61.  Minutes later, the decedent's body shook and his limbs flailed before he lay face down on

the cell bench.  Id. ¶ 62.  The decedent took his last breath at 6:40 p.m.  Id. ¶ 63.  The Complaint

further alleges that Officer Almeida was assigned to the booking desk of the District 4 station

between 12:29 a.m. and 4:00 a.m. on May 28, 2019, and walked by the decedent's cell fourteen

times within that period.  Id. ¶ 66.  Thus, by the time Officer Almeida started his shift and began

his cell checks, *the decedent had already been dead for almost six hours*.  Officer Almeida's

conduct  simply  could  not  have  caused  decedent's  death.   Because  the  Complaint  fails  to

sufficiently allege any causal connection between Officer Almeida's conduct and the decedent's

death, the claim cannot survive the motion to dismiss.

     2.     Where the decedent exhibited no sign of overdose while Officer Almeida was
          assigned to the booking desk and walked by the decedent's cell, the Complaint fails
          to establish that Officer Almeida was or reasonably should have become aware of
          the risk of substantial harm that the decedent ultimately suffered or that Officer
          Almeida exhibited deliberate indifference to the decedent's medical need.

The Complaint asserts that, during the time in which Officer Almeida was assigned to the

booking desk and walked by the decedent's cell, the decedent "displayed clear symptoms of

overdose in his cell."  Id. ¶ 7.  Because of this, the Complaint states, Officer Almeida reasonably

should have become aware of the decedent's risk of substantial harm and medical need.  However,

the only "clear symptom of overdose" the Complaint provides is the decedent's "remaining for

hours in a prone position, without moving."  Id.  The Complaint has not and cannot allege that

Officer Almeida was present to view the short time starting at approximately 6:30 during which

the decedent overdosed and his body subsequently shook.  The Complaint details no signs that

would have made Officer Almeida aware of a substantial risk of harm to decedent, except that he

was lying down on a cell bench at night, including through an alarm.  Nor does the Complaint

allege any action on the part of Officer Almeida that amounted to deliberate indifference.  Because

of these major deficiencies, the Complaint fails to state a § 1983 claim against Officer Almeida

and must be dismissed.

> 3.    This Court should disregard any suggestion that Officer Almeida booked the
>        decedent following his arrest.

There is a stray suggestion in the Complaint that Officer Almeida booked the decedent

following his arrest, at which time the decedent "showed obvious signs of opioid over-

intoxication."  Id. ¶¶ 39, 66.  But there are several reasons why this allegation should not be

considered in the assessment of the deliberate indifference claim against Officer Almeida.  First,

the allegation that the decedent "showed obvious signs of opioid over-intoxication" is conclusory

and unsupported by any details in the Complaint.  See AVX Corp., 962 F.2d at 115.  Second, the

assertion that Officer Almeida was the booking officer at the time of decedent's arrest is untrue.

Specifically, the booking sheet from the decedent's arrest does not list Officer Almeida as the

booking officer.[3]  See Exhibit A, Booking Sheet.  The booking sheet also indicates that the arrest

took place at 2:11 p.m. on the afternoon of May 26, 2019—more than 28 hours before the decedent

ingested drugs and died in his cell.  See id.

Furthermore, it bears noting that the allegations set forth in the Complaint regarding the

booking process appear verbatim in the complaint from the case Lynnel Cox (as administrator of

the estate of Shayne R. Stilphen) v. Boston Police Department et al., which was filed more than

two months before the filing of this Complaint.  The complaint in Cox, alleges that "[t]hroughout

---

[3] Extrinsic documents may be considered by the court without converting a motion to dismiss
into a motion for summary judgment when the authenticity of the documents is not disputed by
the parties or the documents are official public records, central to the plaintiff's claim, or
sufficiently referred to in the complaint.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir.
2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

booking, Shayne showed obvious signs of opioid over-intoxication, but Defendant Officers failed

to seek a medical evaluation, obtain medical treatment, or provide medical care." Cox v. Boston

Police Department, 1:22-CV-11009-RGS, ECF No. 1, Compl., page 14.  Referencing events that

happened on July 14, 2019, the Complaint further alleges: "Between the hours of 12:29 AM and

4:00 AM, Officer Ismael Almeida—the same officer who booked Shayne and walked by his cell

throughout the night of his arrest—was assigned to the booking desk at the District 4 station." Cox

v. Boston Police Department, 1:22-CV-11009-RGS, ECF No. 1, Compl., ¶ 130.  The identical

allegations appear with only the names of the decedent changed in this Complaint.  See Compl. ¶¶

39, 66.  Without these allegations, there is no support in the Complaint for the proposition that

Officer Almeida was the officer who booked the decedent following his arrest.  Accordingly, the

Court's evaluation of the deliberate indifference claim against Officer Almeida should begin with

Officer Almeida's shift on the early morning of May 28, 2019.

**B. The Plaintiff has failed to properly plead a wrongful death action against Officer Almeida under Mass. Gen. Laws ch. 229, § 2 (Count III).**

By Count III, Plaintiff asserts a wrongful death claim under Mass. Gen. Laws ch. 229, § 2.

As with Count I, based on the factual allegations pleaded in the Complaint, Plaintiff has failed to

state a claim upon which relief can be granted against Officer Almeida.

Massachusetts statute provides for civil liability against a "person who (1) by his

negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death

of a person under such circumstances that the deceased could have recovered damages for personal

injuries if his death had not resulted…." Mass. Gen. Laws ch. 229, § 2.  To prove a wrongful death

claim, the plaintiff must show that the defendant owed the plaintiff a duty of reasonable care, that

the defendant breached this duty, that damage resulted, and that there was a causal relation between

the breach of the duty and the damage.  Oahn Nguyen Chung v. StudentCity.com, Inc., 854 F.3d

97, 101-02 (1st Cir. 2017) (citing <u>Jupin v. Kask</u>, 447 Mass. 141, 146 (2006)).  Under Massachusetts

law, the plaintiff must show that the breach of duty constituted a proximate cause of the ensuing

harm.  <u>McIntyre ex rel. Estate of McIntyre v. United States</u>, 545 F.3d 27, 38 (1st Cir. 2008).  "If a

series of events occur between the negligent conduct and the ultimate harm, the court must

determine whether those intervening events have broken the chain of factual causation or, if not,

have otherwise extinguished the element of proximate cause and become a superseding cause of

the harm."  <u>Kent v. Commonwealth</u>, 437 Mass. 312, 321 (2002) (citing <u>Jesionek v. Massachusetts

Port Auth.</u>, 376 Mass. 101, 105 (1978)).  "When a suspect is taken into custody, the police

'assume[] a duty of reasonable care.'"  <u>Titus v. Town of Nantucket</u>, 840 F. Supp. 2d 404, 418 (D.

Mass. 2011) (citing <u>Ringuette v. City of Fall River</u>, 146 F.3d 1, 5 (1st Cir. 1998)).  However, a

precondition to the duty of reasonable care is that the risk of harm to another be recognizable or

foreseeable to the actor.  <u>Jupin</u>, 447 Mass. at 147.  Here, Plaintiff has failed to allege sufficient

facts supporting a wrongful death claim against Officer Almeida.

The wrongful death claim must be dismissed because the Plaintiff has failed to present

factual allegations sufficient to show that Officer Almeida, whether acting in his official or

individual capacity, breached his duty to the decedent.  As shown earlier, the statements made in

the complaint are insufficient to show that the decedent's death was recognizable or foreseeable

to Officer Almeida while he was assigned to the booking desk and walked by the decedent's cell.

Again, although detailed and specific facts are not required for a claim to survive a motion to

dismiss, conclusory statements, absent sufficient factual allegations, are not enough.  <u>Iqbal</u>, 556

U.S. at 678.  The only allegation in the Complaint supporting the proposition that the decedent's

death was foreseeable is the conclusory statement that the decedent displayed "clear symptoms of

in his cell."  Compl. ¶ 7.  The Complaint fails to name a single supposed sign that would have let

17

Officer Almeida become aware of the risk to the defendant, except that the decedent was lying down on a cell bench at night.  See id.  Consequently, Officer Almeida's alleged conduct cannot be shown to have breached the duty of reasonable care that he owed to the decedent because the Plaintiff cannot show that the decedent's overdose and resulting death was foreseeable based on the circumstances known to Officer Almeida.

Additionally, even if the Court somehow does find that the legal conclusions provided by the Complaint are enough to show that Officer Almeida breached his duty of reasonable care, the wrongful death claim still must be dismissed because the Complaint has failed to establish a causal link between Officer Almeida's conduct and the decedent's death.  The Complaint cannot establish a causal relation between Officer Almeida's conduct between 12:29 a.m. and 4:00 a.m. on the morning of May 28, 2019, and the decedent's death because the decedent died at approximately 6:40 p.m. on the night of May 27, 2019.  See id. ¶ 63.  Because the decedent died nearly six hours before Officer Almeida was assigned to the booking desk and began walking by the decedent's cell, any failure to provide medical care at that time cannot be a cause of the decedent's death.

Because the Complaint fails to properly plead a § 1983 action and a wrongful death action under Mass. Gen. Laws ch. 229, § 2, it fails to state a claim upon which relief can be granted. Thus, the Court should dismiss both claims against Officer Almeida with prejudice.

## CONCLUSION

For the foregoing reasons, the Defendant Officer Ismael Almeida respectfully requests that

this Honorable Court dismiss all claims brought against him in the Plaintiff's Complaint.

Respectfully submitted,

Defendant,
ISMAEL ALMEIDA
By his attorneys,


Adam Cederbaum
Corporation Counsel


/s/ *Randall Maas*

Randall Maas BBO#684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
Randall.Maas@boston.gov

19

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 25, 2023.


September 25, 2023                          /s/ *Randall Maas*

Date                                        Randall Maas