UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHELLE GEIGEL,<br><br>              Plaintiff,<br><br>      v.<br><br>BOSTON POLICE DEPARTMENT,<br>ISMAEL ALMEIDA, and<br>JOHN/JANE DOES NOS. 1–2,<br><br>              Defendants. | Case No. 22-cv-11437-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              **January 5, 2024**

## I.      Introduction

Plaintiff Michelle Geigel ("Geigel"), as administrator of the estate of Cristhian Geigel ("Cristhian"), filed this lawsuit against Defendants Boston Police Department ("BPD"), Ismael Almeida (Almeida), and John/Jane Does Nos. 1–2 alleging a violation of Cristhian's Fourteenth Amendment right to due process under 42 U.S.C. § 1983 (Count I), discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Count II), and wrongful death pursuant to Mass. Gen. Laws c. 229, § 2 (Count III).  D. 1.  The City of Boston (the "City") and Almeida have separately moved to dismiss the counts against each of them.[1]  D. 8; D. 27.   For

---

[1] The Court recognizes that BPD is not an independently suable entity and substitutes the City as the proper party.  See Dwan v. City of Boston, 329 F.3d 275, 278 n.1 (1st Cir. 2003); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989).

the reasons discussed below, the Court ALLOWS the City's motion to dismiss and DENIES Almeida's motion to dismiss.

## II.   Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017) (internal quotation marks and citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.   Factual Background

The following facts are drawn from Geigel's complaint, D. 1, and are accepted as true for the purpose of resolving the motions to dismiss.

Cristhian was a 39-year-old male with opioid use disorder ("OUD") who had cycled through periods of active opioid addiction and recovery since high school. D. 1 ¶¶ 2, 24. On May 27, 2019, BPD officers arrested Cristhian in an area of the city recognized as "the epicenter of the opioid epidemic." Id. ¶¶ 2, 35. Officers subsequently booked Cristhian at the District 4 station while he was exhibiting signs of opioid intoxication. Id. ¶ 7, 39; see id. ¶ 66 (alleging Almeida was "the same officer who booked Cristhian"). At least one of the officers involved was aware

that Cristhian had a history of opioid use.  Id. ¶¶ 37, 47.  Between 6:00 p.m. and 6:30 p.m., Cristhian "repeatedly ingest[ed] drugs in his cell."  Id. ¶ 61.  Surveillance video then captured Cristhian's "body shaking and his limbs flailing uncontrollably."  Id. ¶¶ 61–62.  Shortly thereafter, Cristhian stopped breathing and lay face down on the cell bench.  Id. ¶¶ 62-63.

BPD requires its officers to "visit, or cause to be visited, all persons in their custody at least every fifteen minutes" and record those visits in the Prisoner Inspection Record.  Id. ¶ 26.  Between 6:30 p.m. and 6:22 a.m., officers walked by Cristhian's cell multiple times, stopping to look in only five times.  Id. ¶¶ 64–68.  Cristhian remained in a prone position, face down on his cell bench until later that morning, when he was discovered stiff and unmoving by an officer attempting to rouse him for his court hearing.  Id. ¶ 69.

### IV.   Procedural History

Geigel filed this action in September 2022.  D. 1.  The City has now moved to dismiss the § 1983 and Title II claims, the two claims against it.  D. 8.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 21.  Almeida subsequently moved to dismiss the § 1983 and wrongful death claims, the two claims against him.  D. 27.

### V.   Discussion

#### A.   The City's Motion to Dismiss

##### 1.   Municipal Liability Under 42 U.S.C. § 1983 (Count I)

Geigel alleges that the City violated Cristhian's Fourteenth Amendment right to due process under 42 U.S.C. § 1983 by failing to train its officers to address the medical needs of detainees showing signs of opioid intoxication.  D. 1 ¶¶ 4, 36, 75–77; D. 11 at 3–4.  The City moves to dismiss this claim on the ground that Geigel fails to plausibly allege that the inadequate training program amounts to deliberate indifference on part of the City.  D. 9 at 13–14.

3

Although "[a] municipality cannot be held liable under § 1983 on a *respondeat superior* theory," § 1983 does impose "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691–92 (1978).  A municipality's failure to train or supervise its officers may amount to a "policy or custom" for purposes of § 1983 liability only where the inadequate training evidences "deliberate indifference to the rights of persons with whom the police come in contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  "'[D]eliberate indifference' is a stringent standard of fault," such that "[a] showing of simple or even heightened negligence will not suffice."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997).  A city may be deemed deliberately indifferent when it is "on actual or constructive notice that a particular omission in [its] training program causes [officers] to violate citizens' constitutional rights" and fails to properly respond, either by providing appropriate training or through disciplinary action.  Connick v. Thompson, 563 U.S. 51, 61 (2011).  "A pattern of similar constitutional violations by untrained [officers] is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Id. at 62 (quoting Bryan Cnty., 520 U.S. at 409).

While Geigel contends that a lack of training caused officers to disregard signs of medical distress in drug users, D. 1 ¶ 5, the complaint lacks sufficient facts to support a plausible inference that the City was deliberately indifferent to the needs of detainees exhibiting signs of opioid intoxication.  See Ringuette v. City of Fall River, 888 F. Supp. 258, 271 (D. Mass. 1995) (concluding that a failure to train officers to recognize signs of overdose did not rise to "callous or reckless indifference to the needs of intoxicated persons in protective custody").  The complaint makes mention that other overdoses occurred at the District 4 station but does not suggest that these overdoses were caused by insufficient officer training. D. 1 ¶ 59.  The Court cannot plausibly

4

infer from the complaint that the City was on notice of a deficiency in its training program and disregarded the risks to detainees by failing to respond.  Compare McElroy v. City of Lowell, 741 F. Supp. 2d 349, 356 (D. Mass. 2010) (dismissing excessive force claim based on city's failure to train where plaintiff "points to no pattern of constitutional violations or to any other fact that would allow for the inference that the City had the requisite knowledge of an obvious risk to the constitutional rights of its citizens"), and Osman v. Dwan, No. 20-cv-11356-NMG, 2021 WL 11505292, at *10–11 (D. Mass. July 30, 2021) (concluding that allegation of only a single incident of racial profiling by BPD officers was insufficient to state a § 1983 claim against the city for failure to train), with Henriquez v. City of Lawrence, No. 14-cv-14710-IT, 2015 WL 3913449, at *3 (D. Mass. June 15, 2015) (holding that plaintiff stated a plausible § 1983 claim by alleging that the City disregarded multiple citizen complaints of excessive force and denial of medical care amounting to a "history or pattern" of constitutional violations).

Here, the complaint does not plausibly demonstrate deliberate indifference on part of the City as to any policy, practice or training, but alleges that officers in this case did not recognize or take appropriate action in response to Cristhian's condition.  See Canton, 489 U.S. at 390–91 (explaining that shortcomings in a single officer's training may result from negligent administration of "an otherwise sound program").  Under these circumstances, the Court grants the City's motion to dismiss the § 1983 claim, Count I, against it without prejudice.

        2.        *Disability Discrimination under Title II of the ADA (Count II)*

Geigel also contends that the City discriminated against Cristhian as a person with OUD in violation of Title II of the ADA by providing Cristhian with inadequate medical care because of his disability.  Geigel further alleges that the City failed to adopt a policy or implement training for evaluating, treating and monitoring detainees exhibiting signs of opioid intoxication, resulting

5

in disparate treatment for OUD-related medical needs as compared to other medical needs. D. 1 ¶¶ 85, 88, 90.

To state a plausible ADA claim, Geigel must demonstrate that Cristhian (1) was a "qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). For an ADA claim based on inadequate medical care, Geigel "must provide sufficient allegations to create a reasonable inference that the medical treatment decisions [s]he challenges were motivated by 'fear, animus, or apathetic attitudes' towards" Cristhian's drug addiction. Messere v. Clark, No. 11-cv-12166-MLW, 2015 WL 5609959, at *12 (D. Mass. Sept. 22, 2015) (citing Buchanan v. Maine, 469 F.3d 158, 174–75 (1st Cir. 2006)); see Kiman v. N.H. Dept. of Corrections, 451 F.3d 274, 284 (1st Cir. 2006) (explaining that "courts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care").

For the purposes of the motion to dismiss, the City does not contest that Cristhian was a "qualified individual with a disability." D. 1 ¶ 82; D. 9 at 19. Instead, the City argues that the complaint does not plead facts to suggest that Cristhian received inadequate medical care "by reason of" his OUD. See D. 9 at 18–19.

The Court cannot plausibly infer that inadequate training was driven by "fear, animus, or apathetic attitudes" towards opioid users. While Geigel alleges that the City intentionally discriminated against detainees living with OUD or other addictions, D. 1 ¶¶ 5–6, 85–86, she does not allege facts or details suggesting that the City's allegedly inadequate policies were motivated by the City's negative view of drug addiction or drug use. See Sepulveda v. UMass Correctional

6

Health, Care, 160 F. Supp. 3d 371, 392 (D. Mass. 2016) (dismissing ADA claim because plaintiff's "bare allegations of inadequate or negligent medical care, unaccompanied by facts suggesting a discriminatory animus, do not state a claim under Title II of the ADA").  Indeed, even as alleged by Geigel, the BPD has existing procedures directing officers to summon "immediate attention" for detainees exhibiting "[a]ny unusual appearance or behavior" or "unconscious[ness]."  D. 1 ¶ 30.  The complaint also acknowledges that BPD has a policy requiring officers to transport incapacitated persons brought into protective custody to a hospital or other medical facility "[i]n instances where the incapacitation is due to drugs."  Id. ¶ 34.  Geigel does not address how these policies exclude detainees with OUD other than to suggest that opioid users are not explicitly included by reference.  See Buchanan, 469 F.3d at 177 (concluding that plaintiff could not sustain disability discrimination claim on basis that provided police training was "insufficient").

Accordingly, the Court grants the City's motion to dismiss the ADA claim, Count II, with prejudice.[2]

### B. Almeida's Motion to Dismiss

#### 1. § 1983 Claim against Almeida (Count I)

For a claim under § 1983, Geigel must plausibly allege (1) that "the conduct complained of transpired under the color of state law" and (2) as a result, he suffered a deprivation of his rights. Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (citing Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).  To satisfy the second element, Geigel must ultimately prove that Defendants' conduct was the cause in fact of the alleged deprivation.  See Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  The Court may look to principles of ordinary tort law in

---

[2] In light of the rulings above, the Court need not reach the City's argument that the statute of limitations has expired as to Geigel's § 1983 and ADA claims against the City.  The Court addresses this matter below in regard to the claims against Almeida.

7

determining whether causation is satisfied.  Id.; see Drumgold v. Callahan, 707 F.3d 28, 48 (1st Cir. 2013).

Here, Geigel's § 1983 claim invokes the Fourteenth Amendment's substantive due process clause, which requires state officials "to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health."  Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011); see D. 1 ¶ 75 (alleging that "Defendant Officers Almeida and John/Jane Doe Nos. 1–2 were aware of Cristhian's serious medical needs, and deliberately and unreasonably failed to seek a medical evaluation, obtain outside medical treatment, or provide him with medical care themselves").  The constitutional deprivation at issue is thus a deprivation of Geigel's right to life and bodily security.  See Holland v. Breen, 623 F. Supp. 284, 288 (D. Mass. 1985).

As to Almeida's conduct in particular, Plaintiff argues that Almeida's failure to check on Cristhian breached "Almeida's duty to indeed check on him, to make sure he was not hurt, injured, or otherwise in need of medical assistance."  D. 30 at 4.  There is some question about whether Almeida's failure to check on him between midnight and 4:00 a.m. could have contributed to his death that may have occurred before that time.  D. 1 ¶¶ 63, 66.[3]  The complaint, however, also alleges that Almeida booked Cristhian following his arrest, at which time he "showed obvious signs of opioid over-intoxication."  D. 1 ¶¶ 39, 66.[4]  Another session of this Court has concluded

---

[3] Almeida suggests that Plaintiff's counsel copied the complaint in another case (Cox) without regard to whether the factual allegations in paragraph 66 of this complaint are true as to Cristhian. D. 28 at 15-16.  The Court notes that by filing Geigel's complaint, Plaintiff's counsel certified the allegations therein "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" and expects that Plaintiff's counsel conducted a reasonable pre-filing investigation into the allegations of this case.  Fed. R. Civ. P. 11(b).

[4] Almeida argues for various reasons that the Court should not credit the allegation that Almeida was present at booking, D. 28 at 15–16, but on a Rule 12(b)(6) motion to dismiss, this Court must accept all facts alleged as true and draw all plausible inferences in favor of Geigel.

that a plaintiff adequately pled a deliberate indifference claim against individual officers who were present during the decedent's arrest and booking but failed to provide an appropriate medical response and monitoring, because they had reason to "understand that [decedent] faced substantial risk of serious harm [from an opioid overdose] unless provided immediate medical care." Cox v. Bos. Police Dep't, No. CV 22-11009-RGS, 2022 WL 17486595, at *3 (D. Mass. Dec. 7, 2022). A claim premised on Almeida's failure to obtain medical treatment and monitoring for Cristhian when it became clear that Cristhian was at risk of an overdose during the booking process does not fail for lack of causation. See id. at *3.

At the present stage of litigation, Geigel has adequately alleged that Almeida became aware that Cristhian was at a serious risk of harm before his death and was deliberately indifferent to that risk. As alleged, in the absence of medical treatment and monitoring, Cristhian died. Accordingly, the Court denies Almeida's motion to dismiss the § 1983 claim against him.

---

Almeida further urges the Court to consider Cristhian's arrest booking form, which is attached to Almeida's motion to dismiss and identifies an individual other than Almeida as the "Booking Officer." D. 28 at 15; D. 28-1. In so doing, Almeida argues that the booking form is an "official public record[], central to [Geigel's] claim, or sufficiently referred to in the complaint." D. 28 at 15 n.3 (citing Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)). Even if the Court concluded that it was appropriate to take judicial notice of the booking form, it would not draw the inference that Almeida was not present for some or all of Cristhian's booking from the mere fact that Almeida's name was not listed on the booking form. See D. 28-1. Almeida cites to the booking form not merely for what is stated therein but "to present a narrative contrary to that set forth in the [c]omplaint," See Tutor Perini Corp. v. Banc of Am. Sec. LLC, No. CIV.A. 11-10895-NMG, 2013 WL 5376023, at *4 (D. Mass. Sept. 24, 2013) (internal citation and quotation marks omitted) (declining to consider certain extraneous exhibits which were not incorporated into the complaint and noting that consideration of such materials "would accelerate this litigation to the broader evidentiary inquiry reserved for summary judgment or, in the event of a factual dispute, trial on the merits"), which the Court declines to do at this point.

### 2. *Massachusetts Wrongful Death Act*

#### a) Causation

"To prevail on a wrongful death claim, pursuant to G.L. c. 229, § 2, a plaintiff must prove negligence, or willful or reckless conduct, on the part of the defendant, that caused the death of a person." Gianocostas v. Interface Grp.-Massachusetts, Inc., 450 Mass. 715, 727 n.13 (2008). Much like a § 1983 claim, the Massachusetts Wrongful Death Act "largely incorporates common law tort principles," such as factual and legal causation. See Davis v. United States, 670 F.3d 48, 53 (1st Cir. 2012). For the reasons explained above with respect to the § 1983 claim, Geigel has adequately pled that Almeida's failure to obtain medical treatment or to monitor Cristhian after observing signs of opioid abuse during the booking process caused Cristhian's death. See Davis, 670 F.3d at 53–56.

Accordingly, the Court denies the motion to dismiss the wrongful death claim for lack of causation.

#### b) Immunity Under the Massachusetts Tort Claims Act

The Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. c. 258 § 2, immunizes public employees against suits "for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). The MTCA permits such claims to be directed against the public employer instead. Mass. Gen. L. c. 258 § 2; see Canales v. Gatzunis, 979 F. Supp. 2d 164, 174 (D. Mass. 2013). Where the plaintiff's claims arise out of intentional torts committed by public employees, the employees may be held individually liable, but their employers are immune to direct suit on an intentional tort theory. See Mass. Gen. L. c. 258 §§ 2, 10(c); Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 284 (1985) (explaining that common law governmental immunity principles apply to claims arising from intentional torts).

10

"For the purposes of [the MTCA], recklessness is considered negligent, rather than intentional, conduct." Parker v. Chief Just. for Admin. & Mgmt. of Trial Ct., 67 Mass. App. Ct. 174, 180 (2006). Thus, the MTCA will bar a wrongful death claim against an individual defendant that proceeds on a negligence or recklessness theory, but not one that is based on willful or intentional conduct. See Justiniano v. Walker, No. 15-CV-11587-NMG, 2016 WL 5339722, at *4 (D. Mass. Sept. 22, 2016) (denying motion to dismiss where complaint plausibly alleged wrongful death caused by intentional act); Stamps v. Town of Framingham, 38 F. Supp. 3d 146, 159 (D. Mass. 2014) (concluding that public employee was immune to wrongful death suit based on public employee's negligent conduct), aff'd, 813 F.3d 27 (1st Cir. 2016).

Almeida argues that Geigel's wrongful death claim is "based on negligence" and thus barred by the MTCA. D. 28 at 11–12.[5] The complaint, however alleges that "Defendant Officers caused Cristhian Geigel's death by intentional acts," D. 1 ¶ 93; see id. ¶ 87. Geigel's allegation for the intentional nature of Almeida's actions are the "obvious signs" of opioid intoxication that Cristhian displayed at booking, and Almeida's subsequent failure to monitor him and obtain medical treatment. D. 1 ¶¶ 39, 47–51. These alleged failures may well establish, negligence, recklessness or deliberate indifference, without necessarily rising to the level of an intentional tort under the MTCA. See Lopes v. Riendeau, No. CV 14-10679-NMG, 2017 WL 1098812, at *7 (D. Mass. Mar. 23, 2017) (concluding, at summary judgment stage, that "plaintiff's allegation that defendants acted with deliberate indifference does not support an intentional tort claim that would fall outside of the immunity provided by the MTCA"), aff'd, No. 17-1413, 2020 WL 5624121 (1st

---

[5] The allegations of the complaint demonstrate, and neither party disputes, that Almeida was acting within the scope of his employment as a police officer when he allegedly booked Cristhian and walked by his cell during his detention. D. 1 ¶ 66; see Madison v. Cruz, 390 F. Supp. 3d 191, 199 (D. Mass. 2019).

11

Cir. Apr. 9, 2020); de Tavarez v. City of Fitchburg, No. CIV.A. 11-11460-TSH, 2014 WL 533889, at *7 (D. Mass. Feb. 6, 2014) (concluding, at the summary judgment stage, that individual officers were immune to wrongful death claim resulting from overdose in custody). At least at this stage, where Geigel has alleged some intentional conduct, the Court cannot conclude that the MTCA bars the wrongful death claim against Almeida, although this will likely be a topic to revisit on a developed record.

Accordingly, the Court declines at this juncture to dismiss Geigel's wrongful death claim, Count III, on MTCA grounds.

### 3. *Statute of Limitations*

In light of the Court's rulings on the plausibility of the claims against Almeida, this Court must address Almeida's argument that the § 1983 claim and wrongful death claim are untimely under the statute of limitations. "A statute of limitations typically prescribes the time period when an action must be commenced after the cause of action 'accrues.'" Parr v. Rosenthal, 475 Mass. 368, 377 (2016). This Court will only grant a Rule 12(b)(6) motion to dismiss a claim on this basis of an affirmative defense, like a statute of limitations, where "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings'" and "leave no doubt" that the action is time-barred. Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001); see Rice v. Santander Bank, N.A., 196 F. Supp. 3d 146, 154 (D. Mass. 2016).

Here, the parties do not dispute that a three-year statute of limitations governs the § 1983 claim, D. 9 at 6, 11; D. 11 at 1; D. 28 at 5; D. 30 at 1; see Silva v. City of New Bedford, 602 F. Supp. 3d 186, 191 (D. Mass. 2022) (applying Mass. Gen. L. c. 260 § 2A to § 1983 claim) or that a three-year statute of limitations also applies to the wrongful death claim from the date of death or "within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action."

12

Mass. Gen. L. c. 229, § 2. Because it applies the Massachusetts statute of limitations as to these claims, this Court also applies the Supreme Judicial Court's pandemic tolling order ("SJC Order"). Czerwienski v. Harvard Univ., No. 22-cv-10202-JGD, 2023 WL 2763721, at *16 (D. Mass. Mar. 31, 2023) (explaining that "[w]hen a federal court applies a state's statute of limitations, it is obliged to follow the state's 'rule for tolling that statute of limitations'"); see D. 28 at 6–7 (acknowledging that SJC's tolling order applies to § 1983 claims). The SJC Order tolled "all civil statutes of limitations" from March 17 through June 30, 2020, or a period of 106 days. Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 341 (2021). Thus, under both parties' calculations, the statute of limitations will run three years and 106 days from when the cause of action accrues. D. 11 at 2–3; D. 28 at 7.

The parties dispute, however, when the claim accrued and when this action was commenced. Almeida asserts that the claims accrued at the latest on May 28, 2019, when Cristhian was discovered dead in his cell, and thus that the statute of limitations expired on September 12, 2022. D. 28 at 6–7. Almeida further asserts, based on the date stamped on the complaint in the Court's electronic filing system ("CM/ECF"), that Geigel's complaint was not filed until September 15, 2022, three days after the statute of limitations expired. Id. at 7. Geigel argues that the claim did not accrue until December 5, 2019, at a meeting with the Suffolk County District Attorney's Office, during which the District Attorney disclosed to plaintiff's counsel the video of "the events surrounding the death of Cristhian." D. 30 at 2; D. 30-1 ¶¶ 2–7.

Similar to the Mass. Gen. L. c. 229, § 2 statute of limitations for the wrongful death claim, the § 1983 claim accrues "at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim," Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001), and "when all of the acts comprising the specific constitutional violation have been completed," Ouellette v.

13

Beaupre, 977 F.3d 127, 136 (1st Cir. 2020).  "In some cases, the generally available information that alerted, or should have alerted, the plaintiff to both his or her injury and its likely cause will come to light at some point after the plaintiff suffered the injury but before the plaintiff has undertaken any independent investigation or inquiry." Id. at 137.  "In other cases, the generally available information may not be sufficient for accrual, but it may be sufficient to trigger a suspicion in a reasonable person in the plaintiff's circumstances regarding a putative defendant's role in causing the plaintiff's injury." Id. (emphasis in original).  "Under those circumstances, a plaintiff has a duty to investigate or inquire further regarding his or her injury and the party responsible for causing it." Id.  In such circumstance, a "claim will accrue at the point during an investigation when a plaintiff, acting diligently, obtained or would have obtained enough factual information about his or her injury and its cause to file suit against a defendant." Id. at 138.  Still, there are some circumstances where "even the most diligent investigation" would not have provided a plaintiff with sufficient information about his or her cause of action, particularly where there was concealment of a defendant's involvement or information about the injury and its cause were confidential.  Id. (and cases cited).

There remains a dispute as to accrual of Geigel's claims.  The complaint does not specify when Geigel learned of Cristhian's death, although Plaintiff's counsel avers that he was retained by Cristhian's family "in 2019 shortly after his passing." D. 30-1 ¶ 1.  The Court notes that only three days passed between when Almeida asserts the statute of limitations expired and the complaint was filed. D. 28 at 7.  Cristhian was in police custody when he died, and thus his family depended on the police department or other City officials to notify them of his death.  Moreover, Plaintiff's counsel avers that Geigel's ability to obtain information about Cristhian's death was impeded by the confidentiality of the District Attorney's investigation regarding same.  See

Ouellette, 977 F.3d at 138; see McIntyre v. United States, 367 F.3d 38, 55-56 (1st Cir. 2004); Attallah v. United States, 955 F.2d 776, 780 (1st Cir. 1992). That is, the Court cannot conclude, on the present record, that Geigel's claims against Almeida accrued on the date of Cristhian's death or at what point thereafter. At this early stage of litigation, the Court is not prepared to rule that Geigel's pleadings "show beyond doubt that the claim[s] asserted [are] out of time." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004).

Accordingly, at this juncture, the Court denies Almeida's motion to dismiss the § 1983 claim and wrongful death claims as time barred.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the City's motion to dismiss as to Count I (§ 1983 claim) against the City without prejudice and as to Count II (ADA discrimination claim) against the City with prejudice, D. 8. The Court DENIES Almeida's motion to dismiss Count I (§ 1983 claim) and Count III (wrongful death claim), the claims against him.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge