UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 22-cv-11437-DJC

MICHELLE GEIGEL, as administrator of the Estate of Cristhian Geigel,
        Plaintiff

v.

ISMAEL ALMEIDA, and JOHN/JANE DOES NOS. 1–2,

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ISMAEL ALMEIDA'S MOTION FOR SUMMARY JUDGMENT

Defendant Ismael Almeida ("Officer Almeida") submits this memorandum of law in support of his motion for summary judgment on the two counts against him—a § 1983 civil rights claim based on Officer Almeida's alleged violation of decedent Cristhian Geigel's ("the decedent" or "Geigel") right to due process under the Fourteenth Amendment (Count I), and a claim under M.G.L. c. 229, §2, based on Almeida's alleged intentional acts against Geigel resulting in Geigel's death (Count III).

### I.    INTRODUCTION

In its Order denying Officer Almeida's motion to dismiss, this Court highlighted two factual issues that prevented it from ruling in his favor at that time. Regarding the statute of limitations, this Court noted that the complaint "does not specify when [Plaintiff] learned of [the decedent]'s death," and that Plaintiff's counsel "avers that [Plaintiff]'s ability to obtain information

1

about [the decedent]'s death was impeded by the confidentiality of the District Attorney's Office regarding same." (Order 14). Accordingly, the Court was unable to determine when Plaintiff's claims accrued, and thus when the statute of limitations ran. (Order 15). With respect to the causation elements of the § 1983 and wrongful death claims, this Court concluded that the complaint's allegations that Officer Almeida booked Geigel following his arrest, at which time Geigel showed signs of opioid over-intoxication, were sufficient to survive a motion to dismiss. (Order 8–10).

After the Court issued its ruling on the motion to dismiss, it allowed phased discovery on the two issues highlighted above. (ECF No. 37). Now that fact discovery is complete, this Court has facts to conclude that Plaintiff's claims accrued on May 28, 2019, and that Officer Almeida was not present at Geigel's booking or at any other point before his death. On the issue of accrual, Plaintiff herself admitted that she was informed of Geigel's death by possible drug overdose on May 28, 2019, the same day that Geigel was discovered dead. Moreover, Plaintiff's December 2019 meeting with the Suffolk District Attorney's Office provided no new information but only confirmed that Geigel had died of a drug overdose. Using May 28, 2019, as the accrual date, and applying the COVID-19 tolling period, this Court should rule that the statute of limitations for Plaintiff's claims expired on September 12, 2022, three days before she filed her complaint. On the issue of causation, roster sheets from the D-4 station and Geigel's booking form show that Officer Almeida was off duty on the day that Geigel was arrested and booked, May 26, 2019, and that he did not begin working on May 27, 2019, until 11:45 PM, several hours after Geigel had ingested drugs in his cell and stopped breathing. Officer Almeida is thus entitled to judgment as a matter of law because there is no evidence that any action or inaction on his part caused Geigel's death.

The Court should enter a judgment of dismissal on the claims asserted against the City and Officer Almeida (Counts I and III).

## II. RELEVANT UNDISPUTED FACTS[1]

1. On May 26, 2019, Boston Police Officers responded to a call of a person with a sword in the area of 1341 Boylston Street. The person was identified as Cristhian Geigel.[2]

2. Boston Police arrested Geigel for an outstanding warrant, and he was brought to the D-4 station for booking.[3]

3. Officer Almeida was off duty on May 26, 2019. He was not present at D-4 and was not the booking officer when Geigel was processed through booking.[4]

4. After booking, Geigel was transferred to cell #16 at D-4 and remained detained from May 26, 2019 to May 27, 2019.[5]

5. At approximately 6:13 PM on May 27, 2019, Geigel reached into the back of his pants and retrieved an item. At 6:18 PM Geigel walked over to the sink and appeared to snort a substance. At 6:21 PM Geigel walked back to his cell bed and lay face down with the hood of his sweatshirt over his face.[6]

6. At 6:40 PM, Geigel appeared to take his last breath.[7]

7. Officer Almeida worked the last-half overnight shift at the D-4 station during the late night (11:45 PM to 11:59 PM) of May 27, 2019, and the early morning (12:00 to 7:45 AM) of

---

[1] The City sets forth its statement of facts solely for purposes of summary judgment and makes no admissions with respect to the facts contained herein. All facts contained herein are derived from the Defendant's Local Rule 56.1 Concise Statement of Material Facts as to Which There is no Genuine Issue to be Tried.
[2] Rule 56.1 Statement at ¶ 1.
[3] Rule 56.1 Statement at ¶ 2-3.
[4] Rule 56.1 Statement at ¶ 4.
[5] Rule 56.1 Statement at ¶ 6-7.
[6] Rule 56.1 Statement at ¶ 8-10.
[7] Rule 56.1 Statement at ¶ 11.

May 28, 2019. This was Officer Almeida's first time working at D-4 since before Geigel was arrested.[8]

8. Officer Almeida conducted cell checks between midnight and 4:00 AM on May 28, 2019.[9]

9. At 8:39 AM on May 28, 2019, an officer entered cell #16 and attempted to wake Geigel for court. The officer observed that Geigel was very stiff and not moving.[10]

10. Officers at the D-4 station called Boston EMS. EMS arrived at D-4 at 8:43 AM and pronounced Geigel deceased at 8:47 AM. The Office of the Chief Medical Examiner's autopsy report list Geigel's cause of death as, "Acute intoxication due to the combined effects of fentanyl, oxycodone, methamphetamine and heroin." The report lists the manner of death as "accident, (substance abuse)" due to methamphetamine, oxycodone, and fentanyl.[11]

11. Later that day, Detectives Timothy Evans and Kenneth Autio arrived at the house of Plaintiff and her mother to inform them of Geigel's death. The detectives said that Geigel died of a possible overdose.[12]

12. Detective Autio suggested that Plaintiff hire an attorney. On the following day, May 29, 2019, Plaintiff sought her current counsel based on Detective Autio's suggestion.[13]

13. In December of 2019, Plaintiff, her mother, and her counsel requested a meeting with the Suffolk District Attorney's Office regarding the investigation into Geigel's death.[14]

---

[8] Rule 56.1 Statement at ¶ 12.
[9] Rule 56.1 Statement at ¶ 13.
[10] Rule 56.1 Statement at ¶ 14.
[11] Rule 56.1 Statement at ¶ 16-19.
[12] Rule 56.1 Statement at ¶ 20-21, 24.
[13] Rule 56.1 Statement at ¶ 25-26.
[14] Rule 56.1 Statement at ¶ 28.

14. Plaintiff was informed that the District Attorney's office had a video and still images of Geigel in the cell ingesting drugs, seizing after ingesting drugs, and not breathing. Plaintiff was offered the chance to look at the images from the video but refused.[15]

15. When asked whether she learned anything new from her conversation at the District Attorney's Office, Plaintiff testified that it only confirmed that Geigel's death was an overdose from drugs Geigel had on him when he died.[16]

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (Emphasis added). Anderson v. Liberty Lobby, Inc*.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. See id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Here, Plaintiff has failed to present sufficient evidence to allow a jury to return a verdict in her favor on her claims against Officer Almeida.

---

[15] Rule 56.1 Statement at ¶ 29.
[16] Rule 56.1 Statement at ¶ 30.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST OFFICER ALMEIDA BECAUSE THEY ARE TIME-BARRED.

### A. Plaintiff's § 1983 Claim Is Time-Barred

Plaintiff's claim that Officer Almeida violated Geigel's rights under the 14th Amendment of the Constitution by not providing medical care, treatment, and monitoring should be dismissed because it was untimely filed.[17]

Under the borrowing framework of 42 U.S.C. § 1988, Congress "clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule for actions brought under § 1983. Bd. of Regents of Univ. of State of NY v. Tomanio, 446 U.S. 478, 485 (1980) (quoting Robertson v. Wegmann, 436 U.S. 584, 593 (1978)). Thus, because § 1983 has no statute of limitations, courts must use the statute of limitations from the forum where the cause of action arose. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Here, the general personal injury or tort statute of limitations is M.G.L. c. 260, § 2A, which establishes a three-year limitations period. See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Therefore, for Plaintiff's § 1983 claim to be considered timely, it should have been filed within three years from the date the action accrued.

Federal law governs the accrual and commencement of a § 1983 cause of action. Wallace, 549 U.S. at 388 (accrual); West v. Conrail, 481 U.S. 35, 39 (1987) (commencement). Under the Federal Rules of Civil Procedure, a "civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. A § 1983 claim accrues when the allegedly unconstitutional action is completed, and the plaintiff knows, or should know, of the injury and its connection to the defendant. Nieves, 241 F.3d at 52; Ouellette v. Beaupre, 977 F.3d 127, 135–36 (1st Cir. 2020). In determining the start of accrual, the court should initially identify the actual injury of which the

---

[17] Rule 56.1 Statement at ¶ 27.

plaintiff complains. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005). "[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardón v. Fernández, 454 U.S. 6, 8 (1981) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)).

In discovery, Plaintiff herself testified that she was informed by a Boston police detective of the decedent's death on the same day that he was discovered dead, May 28, 2019.[18] Moreover, according to Plaintiff, the detective told her that the decedent died of a possible overdose while he was awaiting transport to New Hampshire to address an open warrant, and he advised her to seek an attorney. Plaintiff's § 1983 claim thus accrued on May 28, 2019. See Nieves, 241 F. 3d 46, 52 (§ 1983 claim accrues "at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim").

State procedural rules govern the computation of the limitations period, including tolling periods. See Wilson v. Garcia, 471 U.S. 261, 269 (1985). The First Circuit has held that tolling periods are governed by state law for a § 1983 action. Benitez-Pons v. Com. of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998). Recently, this Court ruled that the Massachusetts pandemic tolling order, which was in effect from March 17 to June 30, 2020, applies to § 1983 claims.[19] Silva v.

---

[18] Rule 56.1 Statement at ¶ 20-23.

[19] Officer Almeida acknowledges the Massachusetts Supreme Judicial Court's decision in *Shaw's Supermarkets, Inc. v. Melendez*, 173 N.E.3d 356 (Mass. 2021), holding that its own orders concerning court operations during the COVID-19 pandemic operated to toll all statutes of limitations for the period of time between March 17, 2020 and June 30, 2020. However, those orders were made pursuant to the SJC's "superintendence powers over all of the courts in the Commonwealth" which derive from its inherent constitutional and common law power and the supervisory power over "courts of inferior jurisdiction" expressly granted by the Legislature in Mass. Gen. L. c. 211, § 3. The SJC's superintendence powers arguably do not extend to this Court, which is free to enforce the statutory limitations period without regard to the SJC orders concerning the administration of the state courts. At the same time, Officer Almeida recognizes the district court's decisions in *Silva v. City of New Bedford*, 602 F. Supp. 3d 186 (D. Mass. 2022), and *Arbogast v. Pfizer*, No. 22-CV-10156-DJC, 2023 WL 1864295 (D. Mass. Feb. 9, 2023) and analyzes the SJC's tolling order as if it applies to claims in federal court.

7

City of New Bedford, 602 F. Supp. 3d 186, 197 (D. Mass. 2022); Arbogast v. Pfizer, No. 22-CV-10156-DJC, 2023 WL 1864295, at *6 (D. Mass. Feb. 9, 2023).

Here, the Complaint is untimely even if the SJC tolling period applies.[20] Without the pandemic tolling, the statute of limitations period would have ended on May 28, 2022, the three-year anniversary of the accrual event. Applying the tolling period would extend the Plaintiff's permissible filing period by 106 days. In that circumstance, the latest this complaint could have been filed was Monday, September 12, 2022. Since the Plaintiff filed on Thursday, September 15, 2022, this claim is untimely.[21] Thus, regardless of whether the Court applies the SJC tolling period or not, this claim cannot survive summary judgment and should be dismissed with prejudice. See Lattimore v. Dubois, 311 F.3d 46, 53–54 (1st Cir. 2002), cert. denied, 538 U.S. 966 (2003) (dismissing as untimely a federal habeas petition filed one day after the expiration of the statute of limitations' grace period); See also United States v. Locke, 471 U.S. 84, 100–01 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it . . . . A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day."); Merriweather v. Memphis, 107 F.3d 396, 400 (6th Cir. 1997) (dismissing § 1983 claim that was filed one day after the statute of limitations period); Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir. 1990), as amended on reh'g (Aug. 29, 1990) (dismissing § 1983 claim that was filed one day late); Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 99 (D. Mass. 2009) (dismissing § 1983 claims based on arrest that were filed two days after statute of limitations period); Pugh v. City of New

---

[20] ECF 1-2 filed date of Sept. 15, 2022.
[21] ECF 1 filed on Sept. 15, 2022.

York, No. 01-CV-0129-ILG, 2002 WL 398804, at *2 (E.D.N.Y. Jan. 15, 2002) (dismissing § 1983 claim that was filed one day after statute of limitations period).

Plaintiff has argued that she met the statute of limitations deadline because the Complaint and Civil Action Cover Sheet are internally dated September 7, 2022, and because she seems to have paid the filing fee on September 7, 2022, as well. See ECF Nos. 1, 2. But crucially, the available evidence—including the docket entries and the automatically-generated timestamp—indicate that the Complaint was not filed until September 15, 2022. Id. Pursuant to Fed. R. Civ. P. 3, "[a] civil action is commenced by filing a complaint with the court." According to the U.S. District Court's General Order regarding Electronic Case Filing, Section G.1, electronic transmission of a document to the ECF/CM system, together with the transmission of the Notice of Electronic Filing by the Court at the completion of the transaction, constitutes filing for all purposes under the Federal Rules of Procedure. Because Plaintiff has not produced a Notice of Electronic Filing showing that her Complaint was filed on September 12, 2022, or earlier, the claims are barred by the statute of limitations.[22] While Plaintiff may have drafted the documents and paid the filing fee on September 7, 2022, it is clear that for whatever reason, she failed to electronically file for a week, in the process missing the outer end of the statute of limitations. Accordingly, the claims are barred.

In addition, this Court should reject any argument that Plaintiff's claim accrued in December 2019, when she and her attorney had a meeting with the District Attorney's Office to discuss the investigation into the decedent's death. According to Plaintiff's own deposition testimony, at the December meeting, an assistant district attorney told her that there was a video recording of the decedent taking drugs, having a seizure, and then not breathing.[23] The assistant

---

[22] ECF 1-2 filed on Sept. 15, 2022.
[23] Rule 56.1 Statement at ¶ 29.

district attorney offered to show her still images of the video recording but Plaintiff refused.[24] Plaintiff admitted that the December meeting merely "confim[ed]" what the detective had said was the suspected cause of death on May 28, 2019—a drug overdose.[25] Her claim thus accrued on that date and no later. See Ouellette, 977 F.3d at 138 (a "claim will accrue at the point during an investigation when a plaintiff, acting diligently, obtained or would have obtained enough factual information about his or her injury and its cause to file suit against a defendant").

For the foregoing reasons, because the § 1983 claim was untimely filed, it is barred by the statute of limitations. Thus, the Court should dismiss the § 1983 claim with prejudice.

**B. Plaintiff's wrongful death claim is time-barred.**

Plaintiff's wrongful death claim also cannot survive summary judgment because the evidence shows that the Complaint was untimely filed.[26] Under Mass. Gen. L. c. 229, § 2, wrongful death claims must, "be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." The decedent died on May 27, 2019. On that date, the statute of limitations began to run, as the explicit language of Mass. Gen. L. c. 229, § 2 provides that the date of death begins the running of the statute of limitations. Without the SJC tolling period, the statute of limitations period would have ended on May 27, 2022, the three-year anniversary of the accrual event. Again, the complaint is untimely even if the SJC tolling period applies as the additional 106 days would require the Plaintiff to file by September 12, 2022.

---

[24] Rule 56.1 Statement at ¶ 29.
[25] Rule 56.1 Statement at ¶ 30.
[26] ECF 1-2 filed on Sept. 15, 2022.

The wrongful death statute adopts the "discovery rule" in its language providing that claims must be commenced "within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." Mass. Gen. L. c. 229, § 2; Heinrich ex rel. Heinrich v. Sweet, 62 F. Supp. 2d 282, 304-05 (D. Mass. 1999). Similar to a § 1983 claim, "[a]ccrual of a wrongful death claim] is based on a plaintiff's knowledge of facts sufficient to give rise to a belief that the government – not any particular agency of the government – caused the injury." See Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 40 (1st Cir. 2006); Nieves, 241 F.3d at 51; Mass. Gen. L. c. 260, § 10. As such, although, "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim," Barrett 462 F.3d at 39 (citing McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004)), "conclusive knowledge is not necessary." Barrett 462 F.3d at 39 (citing Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003).

Under the discovery rule, the wrongful death claim accrued on May 28, 2019. Plaintiff testified that that was the day on which she learned about the decedent's death.[27] Furthermore, Plaintiff learned in the same conversation with the Boston police detective that the decedent had possibly died of a drug overdose.[28] She sought out her current counsel the next day, May 29, 2019.[29] Plaintiff's December conversation with an assistant district attorney did not offer her any further factual basis for pursuing a wrongful death claim against Officer Almeida. Similar to the § 1983 claim, using May 28, 2019, as the date of accrual, the latest that the wrongful death claim could have been filed was September 12, 2022.[30]

---

[27] Rule 56.1 Statement at ¶ 20-21.
[28] Rule 56.1 Statement at ¶ 24.
[29] Rule 56.1 Statement at ¶ 26.
[30] Rule 56.1 Statement at ¶ 14.

For the foregoing reasons, because the wrongful death claim under Mass. Gen. L. c. 229, § 2, was untimely filed, the Court should dismiss it with prejudice.

V. **THERE IS NO EVIDENCE TO PROVE THE CAUSATION ELEMENT OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 OR MASS. GEN. L. C. 229, § 2.**

In addition to both the § 1983 claim and the wrongful death claim being time-barred and the wrongful death claim being barred by the MTCA, Plaintiff there are no facts sufficient to prove either Plaintiff's Fourteenth Amendment constitutional claim (Count I) or her wrongful death claim (Count III). Thus, Officer Almeida is entitled to judgment as a matter of law.

**A. There is no evidence to prove the causation element of the § 1983 claim.**

42 U.S.C. § 1983 "creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). In a § 1983 claim alleging failure to provide medical care in violation of the Fourteenth Amendment of the Constitution, "the care 'must involve acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Brace v. Massachusetts, 673 F. Supp. 2d 36, 40 (D. Mass. 2009) (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006)). To prove a Fourteenth Amendment violation, a plaintiff must show: (1) that there was a serious medical need; and (2) that officers exhibited deliberate indifference to this medical need. See Brace, 673 F. Supp. 2d at 40 (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "A 'serious medical need' is one, 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)). With respect to the second element, a showing of deliberate indifference, "requires more than mere inadvertence or

negligence. Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded." Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 71 (D. Mass. 2012) (citing Brace, 673 F. Supp. 2d at 41). "To establish deliberate indifference, the plaintiff must prove that the officers 'had a culpable state of mind and intended wantonly to inflict pain.'" LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 140 (D. Mass. 2007) (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

Plaintiff asserts that the "[d]efendants' refusal to seek a medical evaluation, obtain outside medical treatment, or provide [the decedent] with medical care themselves caused [the decedent] to die." Compl. ¶ 76. Indeed, some circuits explicitly identify causation as a separate element of § 1983 deliberate indifference claims generally. See Danley v. Allen, 540 F.3d 1298, 1310 (11th Cir. 2008); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997); see also Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997) (proof of deprivation of rights for § 1983 claims requires proof that defendant's conduct was cause in fact of violation; court may look to principles of ordinary tort law in determining whether causation is satisfied). However, the summary judgment record, even in the light most favorable to Plaintiff, shows no evidence of causation. The evidence is clear that the decedent ingested drugs in his cell between 6:00 p.m. and 6:30 p.m. on May 27, 2019.[31] Minutes later, the decedent's body shook and his limbs flailed before he lay face down on the cell bench. Compl. ¶ 62. The decedent took his last breath at 6:40 p.m.[32] Roster sheets at the D-4 station show that Officer Almeida was not working on May 26, 2019, when the decedent was arrested, booked, and placed into his cell.[33] Officer Almeida first began working at the D-4 station on May 27, 2019, at 11:45 PM.[34] Thus, by the time Officer Almeida started his shift, *the decedent*

---

[31] Rule 56.1 Statement at ¶ 8-10.
[32] Rule 56.1 Statement at ¶ 11.
[33] Rule 56.1 Statement at ¶ 4.
[34] Rule 56.1 Statement at ¶ 4.

13

*had already been dead for approximately 5 hours*. The evidence is clear that Officer Almeida's conduct simply could not have caused decedent's overdose and resulting death.[35]

Because Plaintiff cannot adduce any evidence showing a causal connection between Officer Almeida's conduct and the decedent's death, the Plaintiff's claims fails as a matter of law and the Court should enter judgment on Counts I and III of the Plaintiff's Complaint.

### B. There is no evidence to prove the causation element of the wrongful death claim under Mass. Gen. L. c. 229, § 2.

By Count III, Plaintiff asserts a wrongful death claim under Mass. Gen. L. c. 229, § 2. As with Count I, there is no evidence to support this claim against Officer Almeida, and therefore the Court must dismiss Count III as a matter of law.

Massachusetts statute provides for civil liability against a "person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted…." Mass. Gen. L. c. 229, § 2. To prove a wrongful death claim, the plaintiff must show that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage. Oahn Nguyen Chung v. StudentCity.com, Inc., 854 F.3d 97, 101-02 (1st Cir. 2017) (citing Jupin v. Kask, 447 Mass. 141, 146 (2006)). Under Massachusetts law, the plaintiff must show that the breach of duty constituted a proximate cause of the ensuing harm. McIntyre ex rel. Estate of McIntyre v. United States, 545 F.3d 27, 38 (1st Cir. 2008). "If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not,

---
[35] Rule 56.1 Statement at ¶ 11-13, 18.

have otherwise extinguished the element of proximate cause and become a superseding cause of the harm." Kent v. Commonwealth, 437 Mass. 312, 321 (2002) (citing Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 105 (1978)).

Here, Plaintiff has failed to allege sufficient facts supporting a wrongful death claim against Officer Almeida. Specifically, there is no evidence of a causal link between Officer Almeida's conduct and the decedent's death. The evidence cannot establish a causal relation between Officer Almeida's conduct between 12:29 a.m. and 4:00 a.m. on the morning of May 28, 2019, when Officer Almeida was conducting cell inspections, and the decedent's death because the decedent died at approximately 6:40 p.m. on the night of May 27, 2019.[36] Because the decedent died more than five hours before Officer Almeida was assigned to the booking desk and began walking by the decedent's cell, any failure to provide medical care at that time cannot be a cause of the decedent's death.

In addition, the wrongful death claim against Officer Almeida fails because he is a public employee who was acting in the scope of his employment at the time of decedent's death. Mass. Gen. L. c. 258, § 2, the Massachusetts Tort Claims Act ("MTCA") "shields public employees from personal liability for negligent conduct" in their individual capacities. Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). Under the MTCA, "a public employee is not liable for 'personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.'" Taplin v. Town of Chatham, 390 Mass. 1, 2 (1983) (quoting the statute). Because the evidence is clear that Officer Almeida was acting within the scope of his employment as a police officer for the City of Boston on May 28, 2019, Count III is barred by the MTCA.[37]

---

[36] Rule 56.1 Statement at ¶ 11-13.
[37] Rule 56.1 Statement at ¶ 12.

For the foregoing reasons, Officer Almeida is entitled to judgment as a matter of law on Count III and the Court should dismiss the wrongful death claim with prejudice.

## VI. CONCLUSION

For the reasons set forth herein, Officer Almeida requests that this Honorable Court grant his motion, enter summary judgment dismissing all counts of Plaintiff's Complaint asserted against him, and grant such other and further relief as it deems just and proper.

Dated: April 26, 2024

Respectfully submitted:

**DEFENDANT, CITY OF BOSTON**

By its attorneys:

Adam N. Cederbaum
Corporation Counsel


*/s/ Randall F. Maas*
Edward F. Whitesell, Jr. (BBO#644331)
Randall F. Maas (BBO#684832))
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4042
Randall.Maas@boston.gov
Edward.Whitesell@boston.gov

**CERTIFICATE OF SERVICE**

    I, Randall F. Maas, hereby certify that I served a true copy of the above document upon all parties of record via this court's electronic filing system on April 26, 2024.

| | |
|---|---|
| Dated: April 26, 2024 | /s/ *Randall F. Maas* <br> Randall F. Maas |