UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **MICHELLE GEIGEL,** ) ) ) **Plaintiff,** ) ) **v.** ) ) **BOSTON POLICE DEPARTMENT,** ) **ISMAEL ALMEIDA, and** ) **JOHN/JANE DOES NOS. 1–2,** ) ) **Defendants.** ) ) ) | **Case No. 22-cv-11437-DJC** |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                               **November 8, 2024**

## I.   Introduction

Plaintiff Michelle Geigel ("Geigel"), as administrator of the estate of Cristhian Geigel ("Cristhian"), has filed this lawsuit against Defendant Ismael Almeida ("Almeida"), alleging a violation of Cristhian's Fourteenth Amendment right to due process under 42 U.S.C. § 1983 (Count I) and wrongful death pursuant to Mass. Gen. L. c. 229, § 2 (Count III).[1]  D. 1.  Almeida has moved for summary judgment on these claims against him.  D. 43.  For the reasons discussed below, the Court ALLOWS Almeida's motion for summary judgment.

## II.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

---

[1] The Court dismissed all claims against the Defendant City of Boston, which was substituted for the Boston Police Department as the proper party.  D. 31.

of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are undisputed unless otherwise noted and are drawn from Almeida's statement of material facts, D. 45.[2]

On May 26, 2019, Boston Police Officers responded to a radio call at approximately 1:08 p.m. and arrested Cristhian for an outstanding warrant issued by the Superior Court of Grafton County, New Hampshire for failing to appear in court.  D. 45 ¶¶ 1-2.  Cristhian was brought to the D-4 station for booking.  Id. ¶ 3.  Almeida was on off duty status on May 26, 2019 and was not present at D-4 when Cristhian was processed through booking.  Id. ¶ 4.  After Cristhian was

---

[2] Geigel failed to file a response to Almeida's statement of material facts as required. Accordingly, Almeida's statement of material facts, D. 45, is deemed admitted.  Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (holding that undisputed material facts were deemed admitted because "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties") (quoting D. Mass. L.R. 56.1) (internal citations omitted).

processed through booking he was transferred to cell #16 and he remained detained until the following day, May 27, 2019, which was Memorial Day.  Id. ¶¶ 6-7.

On May 27, 2019 at approximately 6:13 p.m., video footage shows that Cristhian reached into his back pants and retrieved an item.  Id. ¶ 8.  At about 6:18 p.m., Cristhian walked over to the sink and appeared to be snorting a substance for the next few minutes.  Id. ¶ 9.  At 6:21 p.m., Cristhian walks back to the bed and lays face down on the bed with the hood of his sweatshirt over his head.  Id. ¶ 10.  At approximately 6:40 p.m., it appears Cristhian takes his last breath.  Id. ¶ 11. Almeida began working at the D-4 station on May 27, 2019 during the late night shift starting at 11:45 p.m. and working until 7:45 a.m. on the morning of May 28, 2019.  Id. ¶ 12.  During Almeida's shift, he conducted intermittent cell checks between midnight and 4:00 a.m. on May 28, 2019.  Id. ¶ 13.

On May 28, 2019, at 8:39 a.m., another police officer entered Cristhian's cell and attempted to wake him for court.  Id. ¶ 14.  The officer observed that Cristhian was face-down on his cell bed and was very stiff and not moving.  Id.  Police officers called Boston EMS which arrived at 8:45 a.m. and they subsequently pronounced Cristhian as deceased at 8:47 a.m.  Id. ¶ 16.  The autopsy report and declaration of death listed Cristhian's cause of death as acute intoxication due to the combined effects of fentanyl, oxycodone, methamphetamine and heroin.  Id. ¶ 18.

On the evening of May 28, 2019, Detectives Timothy Evans and Kenneth Autio of the Boston Police Department informed Geigel of Cristhian's death.  Id. ¶ 21.  During that conversation, the Detectives informed Geigel that Cristhian was arrested following an anonymous phone call on Sunday, May 26, 2019 alerting police officers to a man playing with a sword that the caller believed to be real and police officers discovered that there was an active warrant in New Hampshire for him.  Id. ¶ 22.  Detectives told Geigel that they intended to transport Cristhian to

New Hampshire court on Tuesday, May 28 due to the Memorial Day holiday on Monday, May 27, 2019.  Id.  Detectives informed Geigel that Boston police officers had discovered Cristhian unresponsive in his cell earlier that morning on May 28.  Id. ¶ 23.  The Detectives informed Geigel that Cristhian's death was under investigation and it was a possible overdose.  Id. ¶ 24.  The Detectives suggested that Geigel retain an attorney.  Id. ¶ 25.  On May 29, 2019, following the suggestion of the Detectives, Geigel sought out and retained her current counsel.  Id. ¶ 26.

In December 2019, Geigel requested a meeting with the Suffolk District Attorney's office for more information relating to the investigation into Cristhian's death.  Id. ¶ 28.  At the meeting, Geigel was informed that the District Attorney had video and still images of Cristhian ingesting some drugs in his cell, seizing and then not breathing.  Id. ¶ 29.  Geigel declined to review the images.  Id.  During her deposition testimony, Geigel stated that the December 2019 meeting only confirmed that Cristhian's death was an overdose.  Id. ¶ 30.

**IV.      Procedural History**

Geigel filed this action on September 15, 2022.  D. 1.  Almeida and the City moved to dismiss. D. 8; D. 27.  The Court granted the City's motion to dismiss and denied Almeida's motion. D. 31.  Almeida now has moved for summary judgment.  D. 43.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 48.

**V.      Discussion**

      **A.      Almeida's Motion for Summary Judgment**

            *1.      Geigel's Claims Are Barred by the Statute of Limitations*

Almeida contends that Geigel's claims under 42 U.S.C. § 1983 and wrongful death claim are time barred because discovery revealed that Geigel was informed of Cristhian's death on May 28, 2019 as well as the potential cause of his death as an overdose while he was being held in police custody.  D. 44 at 2.  A three-year statute of limitations applies to both the § 1983 claim as

well as the wrongful death claim.[3]  See D. 44 at 6-10; D. 46 at 4-6; see also Barrett ex rel. Est. of

Barrett v. United States, 462 F.3d 28, 39 (1st Cir. 2006) (noting that a wrongful death claim accrues

under Mass. Gen. L. c. 229, § 2 "three years from the date of death, or within three years from the

date when the deceased's executor or administrator knew, or in the exercise of reasonable

diligence, should have known of the factual basis for a cause of action") (internal citation and

quotation marks omitted); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (noting that a

three-year statute of limitations applies to section 1983 cases arising in Massachusetts).  Geigel

argues that her claims are not time barred because she did not have sufficient information before

her meeting with the District Attorney's office in December 2019 for her claims to accrue.  See D.

46 at 4-5.  On a more developed record than the Court had at the time of the motion to dismiss, the

Court concludes that Geigel's claims accrued on May 28, 2019 and are, therefore, time barred.

Similar to the Mass. Gen. L. c. 229, § 2 statute of limitations for the wrongful death claim,

the § 1983 claim accrues "at the moment the plaintiff knows, or has reason to know, of the injury

that is the basis for the claim," Nieves, 241 F.3d at 52, and "when all of the acts comprising the

specific constitutional violation have been completed."  Ouellette v. Beaupre, 977 F.3d 127, 136

(1st Cir. 2020); see Skwira v. United States, 344 F.3d 64, 78 (1st Cir. 2003) (noting a claim accrues

for a wrongful death action "once a plaintiff knows, or in the exercise of reasonable diligence

should know, (1) of her injury and (2) sufficient facts to permit a reasonable person to believe that

---

[3] The Court notes that the Supreme Judicial Court ("SJC") tolled the statute of limitations for all civil claims between March 17, 2020 and June 30, 2020 due to the COVID-19 pandemic. See Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338, 341 (2021).  Accordingly, because the Court applies the Massachusetts statute of limitations to these claims, the Court also applies the SJC's tolling order.  See Silva v. City of New Bedford, 602 F. Supp. 3d 186, 198 (D. Mass. 2022) (concluding that the SJC's tolling order applies to § 1983 claims).  Geigel does not contest the application of this tolling, D. 46 at 6, but contends that her claims did not accrue before December 2019.

there is a causal connection between the government and her injury"). That is, accrual can be delayed until "a plaintiff must, or should, be aware of both the fact of his or her injury and the injury's likely causal connection with the putative defendant." Ouellette, 977 F.3d at 136.

"In some cases, the generally available information that alerted, or should have alerted, the plaintiff to both his or her injury and its likely cause will come to light at some point after the plaintiff suffered the injury but before the plaintiff has undertaken any independent investigation or inquiry." Ouellette, 977 F.3d at 137. "In other cases, the generally available information may not be sufficient for accrual, but it may be sufficient to trigger a suspicion in a reasonable person in the plaintiff's circumstances regarding a putative defendant's role in causing the plaintiff's injury." Id. (emphasis in original). The plaintiff is charged with the knowledge and facts that the plaintiff "should have uncovered through a reasonably diligent investigation," recognizing that in some cases "even the most diligent investigation would not have uncovered sufficient information to allow a plaintiff to take action to preserve his or her rights" because "a defendant took steps to cover up its involvement or to keep information about the plaintiff's injury and its cause confidential." Id. at 138.

Here, the undisputed facts indicate that Geigel learned of Cristhian's death on May 28, 2019 when Detectives came to her home and informed her of his passing while he was being held in custody. D. 45 ¶¶ 20-23. The detectives also informed Geigel of the nature of Cristhian's death by stating that it was due to a "possible overdose." Id. ¶ 24. Geigel acknowledges in her deposition testimony that she found it "very odd" and "suspicious" that the detectives kept repeating to her that they "don't search or do a pat down of [persons in custody] when they go into the police station," and that the matter was under investigation and suggested she retain an attorney. Id. ¶ 25; D. 45-10 at 7-8. Geigel further stated that she "didn't understand why [the detectives] were

suggesting that we had to get an attorney if it was just a normal overdose." D. 45-10 at 15-16.

Geigel acted on the detectives' suggestion and retained an attorney the following day, May 29,

2019. D. 45 ¶ 26.

Although Geigel claims that she did not have sufficient information for the statute of

limitations to begin running on May 28, 2019, D. 46 at 5, and contends that the statute of limitations

only began running from the later date of the December 2019 meeting with the District Attorney,

it is undisputed that Geigel attested that she did not learn of anything new at the meeting with the

District Attorney concerning Cristhian's death. See D. 45 ¶ 30; D. 45-10 at 21-22 (stating that the

information Geigel received "was more confirming that it was an overdose and that he did take the

drugs that he had on him"). On this undisputed record, the Court concludes that Geigel was on

notice of her injury and the causal connection with the police department as of May 28, 2019. See

Skwira, 344 F.3d at 81 (holding claim for wrongful death was time barred because the limitations

clock started when plaintiffs were on notice of their injury when they were aware of suspicious

reports of deaths, they knew the government had begun an investigation into the decedent's death

and they knew that the cause of death was incorrect); Nieves, 241 F.3d at 52 (holding that

plaintiffs' claims based on the officer's physical abuse accrued at the time those events occurred

because plaintiffs had "ample reason to know of the injury then and there"). Accordingly, the

Court holds that Geigel's claims are time barred as she had until September 12, 2022 to file suit

but did not do so.[4]

---

[4] Although absent from her opposition here, see D. 46 at 4-6, the Court notes that Geigel
has previously contended that she met the statute of limitations deadline because the complaint
and civil action cover sheet are dated September 7, 2022 and she paid the filing fees on the same
date. See D. 11 at 2; D. 44 at 9. Almeida contends that the complaint was not filed until September
15, 2022, based on the docket entries and the timestamp of the filing date. D. 44 at 9, see D. 1; D.
2. The Court notes that even though the civil action cover sheet and complaint are signed by
Geigel's attorney on September 7, 2022, the docket reflects that the complaint and the filing fees

<em>2.       Geigel Cannot Establish That Almeida Acted With Deliberate Indifference<br>in Violation of Fourteenth Amendment, 42 U.S.C. § 1983</em>

Assuming *arguendo* that Geigel's claims are not barred by the statute of limitations, Geigel's Fourteenth Amendment claim under § 1983 claim still fails because she cannot prove that Almeida acted with deliberate indifference to Cristhian's serious medical needs.  "The essential elements of a claim under section 1983 are:  [f]irst, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law."  Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  To prove a Fourteenth Amendment violation for denial of a medical need, a "[p]laintiff must prove:  (1) that there was a serious medical need; and (2) that the prison official exhibited deliberate indifference to this medical need."  Brace v. Mass., 673 F. Supp. 2d 36, 40 (D. Mass. 2009).  A showing of deliberate indifference requires "more than mere inadvertence or negligence. Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded."  Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 71 (D. Mass. 2012).  Deliberate indifference requires a culpable state of mind where the officer must have "actual knowledge of impending harm, easily preventable" and can be evidenced by "the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care."  LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 140 (D. Mass. 2007), aff'd, 550 F.3d 166 (1st Cir. 2008) (internal citation and quotation marks omitted); see Alsina-Ortiz v. Laboy, 400 F.3d 77, 82 (1st Cir. 2005) (recognizing that "[w]illful blindness and deliberate indifference are not mere

---

were paid and filed on September 15, 2022.  See D. 1; D. 1-1; D. 2.  Rule 3 of the Federal Rules of Civil Procedure provides that a case commences when a complaint is filed with the Court.  See Fed. R. Civ. P. 3; Silva, 602 F. Supp. 3d at 192; McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995) (recognizing that "the [federal] rule makes it transpicuously clear that an action is commenced when the papers are filed").

8

negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent").

Here, the record does not support that there is a genuine issue of material fact that Almeida was deliberately indifferent to Cristhian's serious medical needs.  Geigel argues that the deliberate indifference Almeida displayed was conducting a head count rather than a full, physical wellness check to ensure Cristhian was breathing.  See D. 46 at 6-7.  The undisputed evidence shows that Almeida was not the booking officer when Cristhian was brought into police custody and he was not present when Cristhian ingested drugs or overdosed.  See D. 45 ¶¶ 4, 11-12; D. 45-2 at 1; D. 45-3 at 18.  The undisputed evidence shows that Almeida came onto shift approximately five hours after Cristhian overdosed and there is nothing in the record that evidences that Almeida had any knowledge of Cristhian using drugs or having a serious medical need that he knowingly ignored.  See D. 45 ¶¶ 4, 11.  Geigel has pointed to no facts to suggest a genuine dispute that Almeida was aware or could have been aware of Cristhian's medical need prior to starting his shift and knowingly chose to ignore that need.  See D. 46.  Accordingly, there is no genuine dispute of material fact that Almeida did not have knowledge of Cristhian's medical condition, and therefore, did not show deliberate indifference.  See de Tavarez v. City of Fitchburg, No. 11-cv-11460-TSH, 2014 WL 533889, at *5 (D. Mass. Feb. 6, 2014) (granting summary judgment on § 1983 claim because there were no facts regarding whether the defendant police officer had knowledge that decedent had ingested drugs and "there is nothing in the record suggesting [defendant] knew of any risk of harm to [decedent]"); see also Alsina-Ortiz, 400 F.3d at 82 (affirming summary judgment because plaintiff pointed to no evidence that these prison officials had knowledge of prison guards failing to report inmate medical needs from which "defendants then averted their eyes").  Although Geigel argues that Almeida failed to appropriately monitor

Cristhian, "without the knowledge of an elevated risk of harm there can be no deliberate indifference" and Almeida's actions "[do] not rise to the level of a constitutional violation." de Tavarez, 2014 WL 533889, at *5.  Accordingly, summary judgment is warranted as to Almeida's § 1983 claim, Count I.

### 4. Massachusetts Wrongful Death Act

Assuming *arguendo* that Geigel's wrongful death action is not barred by the statute of limitations, her claims similarly fail because there is no genuine dispute of material fact that Almeida caused Cristhian's death.  "To prevail on a wrongful death claim, pursuant to [Mass. Gen. L. c. 229, § 2], a plaintiff must prove negligence, or willful or reckless conduct, on the part of the defendant, that caused the death of a person." Gianocostas v. Interface Grp.-Mass., Inc., 450 Mass. 715, 727 n.13 (2008); see Mass. Gen. L. c. 229, § 2.  The Massachusetts Wrongful Death Act "largely incorporates common law tort principles," such as factual and legal causation.  See Davis v. United States, 670 F.3d 48, 53 (1st Cir. 2012).  Geigel argues that there is a genuine dispute of material fact as to when Cristhian died and the "exactitude" of Almeida's performance of his duties conducting wellness checks because the death certificate cites the date of death as May 28, 2019, the dispatch removal report indicates the time of death as 8:47 a.m. and Almeida was working the first four hours of the May 28 shift.[5]  D. 46 at 6-7; see D. 45-7 at 1.  The Court notes, however,

---

[5] The Court notes that although Geigel argues in her papers and at the motion hearing about the time and date of Cristhian's death and when Cristhian took his last breath, see D. 46 at 6-7, Geigel did not submit a response to Almeida's statement of material facts, and it is, therefore, undisputed that Cristhian took his last breath at 6:40 p.m. on May 27, 2019.  D. 45 ¶ 11.  Geigel did not adduce any evidence that suggests a material dispute that Cristhian did not take his last breath at that time or that May 28, 2019 was the date that his death was recorded and not the date he died.  Absent any contrary evidence, summary judgment is appropriate.  See Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013) (affirming summary judgment because plaintiffs failed to produce evidence concerning an essential element of their claim and "[t]he summary judgment stage is the put up or shut up moment in litigation") (internal citation and quotation marks omitted).

that Geigel does not contest the video image of Cristhian taking his last breath at 6:40 p.m. or that

Almeida started working his shift approximately five hours later at 11:45 p.m.  See D. 45 ¶¶ 11-

12.  As noted above, there is no dispute that Almeida was not present when Cristhian was arrested

and booked, when he ingested drugs or overdosed, D. 45 ¶¶ 4, 11-12, and therefore, the Court does

not find a basis for a genuine factual dispute that Almeida caused Cristhian's death from an

overdose.[6]  Cf. Cox v. City of Bos., No. 22-cv-11009-RGS, 2024 WL 2186840, at *7 (D. Mass.

May 14, 2024) (reasoning there was a "genuine factual (and medical) dispute" concerning whether

decedent "died as a result of ingesting the drugs he had available in his cell (drugs that the [police

officers] failed to detect and remove from his person during the arrest and booking procedure") or

from previous drugs ingested and because the police officers allegedly had observed the decedent

displaying behaviors indicative of an overdose).

Alternatively, the wrongful death claim against Almeida is barred by the Massachusetts

Torts Claims Act ("MCTA").  Under the MTCA "public employees are immune from liability for

negligent or wrongful acts if they are acting within the scope of their employment."  Lopes v.

Riendeau, No. 14-cv-10679-NMG, 2017 WL 1098812, at *6 (D. Mass. Mar. 23, 2017), aff'd, No.

17-cv-1413, 2020 WL 5624121 (1st Cir. Apr. 9, 2020).  Although Geigel premised her theory of

wrongful death that [Almeida] "caused [Cristhian's] death by intentional acts," see D. 1 ¶ 93, the

developed record at this summary judgment stage as summarized above amounts to allegations of

negligent conduct.  Here, Geigel has argued that Almeida "owed the plaintiff a duty of reasonable

---

[6] The Court notes that because the standard for causation is the same under § 1983 claim as it is for the Massachusetts Wrongful Death Act claim, Geigel's § 1983 also fails for lack of causation.  See Rodriguez-Cirilo, 115 F.3d at 52 (recognizing that causation in a § 1983 claim is "based on basic notions of tort causation"); Est. of Miller, 2024 WL 1416066, at *15 (recognizing that like a § 1983 claim, the wrongful death act claim incorporates common law tort principles of factual and legal causation).

care" and breached that duty by displaying "deliberate indifference" and "wanton recklessness" by failing to ensure Cristhian was breathing during the wellness checks.  D. 46 at 6-7.  Even, however, "deliberate indifference entails something more than mere negligence, . . . something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  As the Court has previously concluded that there is no genuine dispute of material fact that Almeida did not act with deliberate indifference to a serious medical need, the record does not support a claim that would fall outside of the immunity provided by the MCTA.  See Lopes, 2017 WL 1098812, at *7 (holding summary judgment was appropriate because "plaintiff's allegation that defendants acted with deliberate indifference does not support an intentional tort claim" and there was no genuine dispute with respect to immunity from suit); cf. Cox, 2024 WL 2186840, at *7 (rejecting summary judgment regarding a wrongful death act claim based on intentional acts and concluding that there was a dispute of fact concerning the defendants' state of mind as there was evidence suggesting that they had observed the decedent showing signs of an overdose) (internal citation and quotation marks omitted).  Summary judgment therefore, is warranted on this alternative basis as well.

For all of the aforementioned reasons, the Court grants summary judgment as to the wrongful death claim, Count III.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Almeida's motion for summary judgment, D. 43.[7]

---

[7] The Court also dismisses the claims against the John/Jane Does Defendants No. 1 and 2, which Geigel has neither identified nor served.  As a "district court otherwise prepared to act on dispositive motions is not obligated to wait indefinitely for [the plaintiff] to take steps to identify and serve . . . unknown defendants," see Figueroa v. Rivera, 147 F.3d 77, 82-83 (1st Cir. 1998)

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

(internal quotation marks and citation omitted) (affirming district court's dismissal without prejudice of claims of deliberate indifference to a medical need against John Doe defendants whom plaintiff never served or identified in the seventeen months between the filing of the complaint and the entry of judgment), dismissal without prejudice as to the Doe Defendants in this case is appropriate.